Carr, J.
It was questioned at the bar, whether the bill of exceptions in this case, contained a statement of ail the evidence before the jury, or a certificate by the judge of such facts only as he considered proved. To my understanding, it is a simple detail of the evidence, drawn by the *343 counsel, and signed by the judge, not omitting one tittle of the testimony before the jury. It begins thus: “ Be it remembered, that on the trial of this cause, the plaintiff introduccd, in support of the issue on his part, a bond in these words, &ic.” setting out the paper with its indorsements verbatim et literatim: and then is added, “ and this being all the evidence on the part of the plaintiff, the defendant introduced a witness who proved &c.” going on to detail, with great particularity, the evidence of this witness. It is then added, “the defendant admitted, that he had purchased a negro of the obligee, at the price of 500 dollars, some years previous to the bond, on which this suit was instituted. The witness also stated, that he did not know, that this bond upon which suit is brought, was given for a gaming consideration. And these being all the facts proved in the cause, the jury” &c. notwithstanding these last words “ facts proved,” it is clear to me, that this is a detail of the evidence, and all the evidence, before the jury, not a statement, by the court of such facts, as it considered proved by the mass of evidence. The whole frame and manner of the exception shews this.
This then, is the very question which was before the court in Bennett v. Hardaway, in which judge Roane delivering the opinion of the court, after stating the case, says, “ the question is, whether it is competent to a party, to carry all the evidence to the appellate court, by a bill of exceptions, and on the ground of it to reverse a judgment of the court below, refusing to grant a new' trial ?” He proceeds to give strong and conclusive reasons, why an appellate court, cannot upon the evidence reverse the opinion of the trying court. “ It. does not follow, (he says) that the judge believes every witness who gives evidence before him ; as he may well hesitate to do, from the manner of testifying, and other extraneous circumstances; nor can he do it, where they conflict with one another. It is evident, therefore, that, in this case, the opinion of this court might he founded on the testimony of witnesses, who were discredited both by the jury and the court below.” Notv, apply this reasoning to *344 the case before us: we have the statement of a witness, . ' who says, that in March 1819, he saw the obligor and obligee gaming, and the next morning the obligee told him, he hád won of the defendant about 600 dollars : that, in September 1819, the obligee and tire subscribing witness to the bond, came to the house of the witness, and said they had come to meet the defendant there, who had agreed to give his bond to the obligee; that the debt for which the bond was to be given was a gaming debt, and that a part of it was transferred to the plaintiff, for whom this bond was to be taken: that the defendant failed to meet, but afterwards, in the same month, the obligee and the subscribing witness told the witness, that they had obtained the bond from the defendant, but had to take it for less than the original gaming debt, being compelled to allow credits in order to get the bond. The witness added, that he did not know, that this bond now in suit was given for a gaming consideration. It is insisted, that this evidence makes it very clear, that the bond in the record was the very bond given for the gaming debt; and that the jury and court grossly erred, in not drawing this inference, instead of the contrary one. But, how do we know, that the court and jury believed this wit-? ness? They may have discredited his whole tale. They saw and heard him; and there may have been that in his manner (though wholly hidden from us) which proved to them he was intirely unworthy of credit. Is not this more likely, than that the jury and court should have come to a conclusion the very opposite of that, at which (if they credited the witness) it is insisted, they must inevitably have arrived ? And if upon the strength of what this witness swore, we reverse the judgment and set aside the verdict, may not our opinion (in the words of judge Roane) be founded, upon testimony discredited both by the jury and court below ? “ This (the judge adds) would be for this court, not only to revise and reverse the opinion of the court below, on a question touching the weight of evidence and the credit of the witnesses, but to do it in the dark, or, at least, with lights *345 inferior to those possessed by that court. That court while it can faithfully transmit to this, the actual words spoken by (lie witnesses, can give it no fac simile of the manner of testifying, the hesitation or partiality manifested on the trial, or the like. With respect to these important circumstances, as they relate to the weight of testimony, and credibility of witnesses, this court is intirely in the dark; the advantages are exclusively confined to the court of trial.” The judge then illustrates his position by several analogies: among others, the case of a verdict found on a view, in which the court will hardly ever grant a new trial, “ because the jury may have been influenced by what they saw on the view, and which the court did not see. This last position (he adds) is intirely analogous to the case before us, and decisive of it. The jury and court below saw what this court cannot see. They had, or may have had, the most cogent reasons for discrediting witnesses, on whose testimony (it appearing only on paper) this court might found its judgment.” Upon this reasoning the court decided, that it is not competent to a party to carry up the evidence to an appellate court, by a bill of exceptions, and upon the ground of it to reverse the judgment of a court below refusing to grant a new trial: and this decision seems to me conclusive of the present case.
But in Bennett v. Hardaway, the court after deciding the case before it, puts another, and says, that if a bill of exceptions were taken to the refusal to grant a new trial, in which bill the judge should state the facts, (contradistinguished from evidence) as they appeared in evidence to him, they would be inclined to entertain such a bill of exceptions. “ In that case, the exception is not liable to the objection existing in the case before us. The appellate court does not, in that case, depart from or overrule the decision of the trying court, as to the weight of testimony, or the credit duo to any witness. It only acts upon his own certificate and acknowledgment of his opinion upon the subject. Such an exception only states briefly the facts as they appeared *346 to the judge, and are admitted by him to have been proved; and in consequence of such his admission, the appellate court founds its decision, upon the same facts as those which governed the court below.” In the case here put, it seems to me, that the appellate court must receive and act upon the facts stated, as it would act upon a special verdict, in which it is to have facts, not evidence; and is to infer or imply nothing: the inferences must be made by the judge who tried the cause, because they depend on the weight of evidence, the credibility of witnesses and he alone, who saw and heard them, can weigh them. In the case before us, for instance: the bond shewed no gaming; the fact, that the defendant had bought a slave from the obligee, some years before, shewed, that the bond might have been given on that account. But the evidence of the witness, detailing what he saw, and what the obligee told him, went strongly to the conclusion, that the bond was for a gaming debt. The jury, however, have said, that it was not so, and the court agreed with them. Now, they both heard this witness; and their decision must have been governed very much by the credit they gave him. If they believed him, we can hardly see, how they avoided the conclusion, that it was a gaming debt. If they disbelieved him, the verdict of the jury was intirely correct, and so was the refusal of the court to grant a new trial. If this bill of exceptions, then, had intended to give us the court’s state of the facts, as proved, it ought to have stated, not the evidence of this witness, but its opinion of the effect of that evidence; the facts it proved.
I think, then, in every aspect in which we can view the case of Bennett v. Hardaway, whether we take the case actually decided by the court, or that hypothetically put, it condemns the bill of exceptions before us.
It seems a little strange, that the defendant, knowing that he had to prove his plea, did not summon the only witness, who could have placed the fact beyond question. The subscribing witness to the bond must have known all about *347 tiie matter: we do not hear, that he had removed, was dead, or could not he found.
Upon the whole, I do not think we can reverse this judgment, without the hazard of acting upon evidence, which the jury and court below discredited: I am therefore for affirming it.
Green, J.
I think the exception in this case was well taken. The effect of the case of Bennett v. Hardaway is, that it is not competent to a party, by way of an exception to the granting of or refusal to grant a new trial, to refer to the judgment of the appellate court, the credit of the witnesses; and that, therefore, the facts considered by the court as proved upon the trial, and not the evidence by which they are proved, should bo stated. If the rule there [aid down, were considered as extending further than this, and to require, that the court should not state the proved, facts from which the fact in issue might or might not be inferred, hut only the inference made by the court; then, there could be no case, in which an exception to the allowance or refusal of a new trial, could be successfully taken, (except where the court below erred in declaring the law arising from an admitted state of facts), even in a case, where the ground of the application for a new trial, is, that the verdict was contrary to the evidence. For,, if the proof of the fact in issue, was direct and contradictory, tho court must state, that the fact was proved, in its judgment, according to the credit it gave to the testimony: and to such a case the rule in Bennett v. Hardaway, applies. But, in a case in which there was no direct evidence to prove the fact in issue, but only proof of other facts from which the matter in issue might or might not bo inferred ; if the court, instead of stating the proved facts, from which such an inference might arise, were required to state its own inference, this would be, not to state tho fact or facts proved, but the judgment of the court as to their effect: and there would be nothing for the appellate court to decide. *348 or act upon. Yet, the jury and court below may err as essentially, and as fatally to the rights of the parties, in their inferences of other facts from the admitted facts, as in respect to the law arising from the facts proved. And, as I understand the decisions of this court, such an error may be corrected by exception and appeal.
This is such a case. The clear inference from the proved facts, was, that tire bond in question was given for a gaming consideration. Those facts are, that the parties gamed in March; and the obligee, afterwards, declared that he had then won 600 dollars of the obligor. In September, the obligee and the agent of the subsequent assignee declared, that they went to a certain place to meet the obligor, by appointment, who was then to give his bond for a gaming debt due to the obligee, a part of which had already been transferred to the subsequent assignee of the bond: not meeting the obligor at the appointed place, they afterwards, in the same month, declared, that they had obtained the bond from the obligor, for less than the original gaming debt, the obligor having compelled them to allow; credits, as a condition of giving the bond, which he would not otherwise have allowed. The bond in question, is dated the sixteenth and was assigned the eighteenth of September; and the agent of the assignee is the subscribing witness, both to the execution of the bond and the assignment. The only fact directly proved, was that of the gaming: all the rest were inferrible from the admissions of the obligee and the agent of the assignee; an agent for procuring the bond and assignment, whose declarations being a part of the res gesta, and therefore admissible, or if not, unimportant, since those of the obligee were sufficient. The court could not truly certify, that it was proved that the obligee won money of the obligor, and that he took this bond for the money so won. It could, with truth, only state, that those facts had been admitted by him, from which the existence of the facts might be fairly inferred.
*349 To avoid the plain inferences from the facts proved, the appellee insisted on the fact, that the obligor had, some years before the date of the bond, purchased a slave of the obligee at the price of 500 dollars, and so this bond for 353 dollars might have been for the balance of that purchase; an inference decisively repelled by the fact, that the bond was given for less than the gaming debt, in consequence of set-offs claimed and allowed, so that, upon their transactions, independent of the gaming debt, the obligee was indebted to the obligor.
It is said the evidence did not support the plea, which alleges that the bond was given for money won by unlawful gaming at cards, while the evidence is silent as to the manner of gaming. It does not appear, that this objection was taken at the trial, or upon the motion for a new trial. To allow it now to prevail, would be a surprise on the party. Suppose no inquiry was made of the witness, by either party, at the trial, as to the manner of the gaming, and this objection had been made upon the motion for a new trial: ought not the court to have inquired how the fact was, and if it found that the gaming was at cards, and there were no other objection, to have allowed a now trial, upon the ground of surprise ? I think it ought: and, as the appellee failed to make the objection in the court below, where it might have been met and obviated, it ought not to be heard here.
I think the verdict was manifestly contrary to evidence, and that both judgments should be reversed, and a new trial of the issue directed.
Coalter, J.
I am of opinion, that this is a bill of exceptions, which, according to the authority of Bennett v. Hardaway, presents a fit case for the judgment of this court on a refusal of a court below to grant a new trial, on the ground of the verdict being contrary to evidence.
There was no conflicting evidence in the case : only one witness was examined ; and the facts not proved by him, were admitted by the parties, and inserted in the bill of exceptions.
*350 If the bill of exceptions had stated, that the defendant introduced a witness who testified to such and such a purpose. perhaps, it might have been said (though the court below does not say so) that the court did not believe him, and so was right in not granting a new trial. But, I incline to think, that, in such a case, the court ought so to have stated it, as its reason for refusing a new trial, where, otherwise, such new trial ought to have been granted. This would not be necessary, if there was a contrariety of evidence j because two conflicting witnesses, however credible, cannot both be believed ; one or the other must be mistaken, or wilfully perjured; the court and jury must judge of this; and then the court must certify the fact as it believes it to be proved. I presume it would not be less a fact, because certified in the language of the witness. It may be necessary so to certify it; because as in this case, what the witness proves may only amount to circumstances, from which the main fact in controversy may be inferred one way or the other. Suppose there had been another witness who had testified, that he was present at the same times and places, mentioned by the witness whose evidence is detailed in this cause, and who had stated contradictory facts, which, if believed, would overthrow his evidence, but which was not believed, either from the manner of giving evidence, or infamy of character, or for any other reason: such evidence ought to form no part of the bill of exceptions, since it proved nothing, and therefore it would be improper to introduce it, according to the case of Bennett v. Hardaway, unless, indeed, for the purpose of shewing to this court, that there was contrariety of evidence, and that on that score the court below ought not to have interfered, the jury being the proper judges of credit &c. But here, the bill of exceptions does not state, that the defendant introduced a witness who testified, but a witness who proved, certain facts, and confessions of the obligee, going to shew that the debt sued for was a gaming debt; and then concludes, “ these being all the facts proved, in the cause,” See. Now, I con- *351 less, I cannot see the difference as thus stated, and a statement, that the defendant proved, that in the month of March 1819, the obligor and obligee gamed together, and that on the next day the obligee confessed that he had won 600 dollars of the other: that in September, (the bond in question hearing date the sixteenth day of that month) the subscribing witness (who the plaintiff admitted was his agent) together with the obligee, repaired to a certain place, as they confessed, in order to take an obligation from the defendant for the gaming debt aforesaid, &c. &c. setting out every thing, which the witness proved, in this way.
The only question, it seems to me, which the bill of exceptions before us, or one taken in the way last indicated, would present, is, whether, if the jury failed to draw the inference (which it would have been well warranted in doing) that the obligation sued on was given for a debt won at unlawful gaming, it was competent for the court, which heard the trial, to set aside the verdict as being contrary to evidence ?
It is true, that this is a case, in which the jury must infer the fact, that this was a gaming debt, and it would be incompetent for a court to do so, on a special verdict finding these facts and circumstances : hut I do not think it follows, that, if a jury improperly infer a fact, from circumstances too weak to justify the inference, or fail or refuse to infer a fact) which, in many cases, they would he as correct in inferring, as to find the fact on positive proof, it is without the power of the court to correct such improper finding. Had the court granted a new trial in this case, and an exception had been taken precisely in the words of this bill, and the verdict on the now trial had been for the defendant, could we have reversed the judgment, because, although we might agree with the court which granted the new trial, that the first verdict ought to have been the same with the last, yet the first verdict must stand, the court not having the power to set it aside ? It seems to me not. Where the evidence is not conlradictorv, where there is no contest about creed *352 bility, the court and jury must each weigh die evidence, whether positive or circumstantial, and must each, within their respective spheres, pronounce upon it. If this be correct, then, either no appeal lies to correct an error in refusing or granting a new trial in such a case, or it must be done in the manner in which this case is brought before us.
I am of opinion, that the current of decisions in this court warrants the appellate tribunal, in a case properly made out as this is, in revising the decisions of inferior tribunals refusing to grant new trials. I am also of opinion, that the inference, from the facts proved, that this obligation was given for a gaming consideration, is too manifest and irresistible, to justify the verdict of the jury, and the refusal of the county court to set it aside. Both judgments must, therefore, be reversed, the verdict set aside, and the cause remanded for a new trial to be had.