BnocKENBROtroat, J.
The question here presented, is, whether this court shall judge of the propriety of the judgment of the circuit court in refusing to grant a new trial, on the statement made in the bill of exceptions taken to that refusal? Bennett v. Hardaway established the principle, that if the exceptor spread out the evidence given at the trial, and the evidence was conflicting and contradictory, the appellate court could not decide whether the new trial should be granted or not, and therefore such a bill of exceptions should be entirely disregarded. This court said, that, in such cases, the trying court have the witnesses before them, and can judge not only from the words spoken, but from the manner of testifying, the hesitation or partiality manifested on the trial, or the like, on which side the truth is; but these lights are excluded from the appellate eff yt, who onlv see the evidence on paper, and therefore^- : c; ame opportunity of judging correctly *140 of the credit to be given to the respective witnesses, and whether the verdict, so far as it is affected by the comparative weight of the testimony, be contrary to the evidence, or not. The court also said, that if a bill of exceptions states facts, as they appear in evidence to the trying court, the appellate court may decide on such a bill of exceptions: that in such case, the appellate court does not depart from or overrule the decision of the trying court, as to the weight of testimony, or the credit due to any witness; it only acts upon the certificate of the inferiour court, and the acknowledgment of its opinion on the subject. This decision of Bennett v. Hard-away, has not been shaken. That case did not call for any exposition of the character of the fads, of which the appellate court might judge, on an application for a new trial. Now, it is well known, that in trials before a jury, circumstances are every day given in evidence, which do not of themselves prove the fact which is in issue, but the fact itself may bo inferred from those circumstances. The circumstances proved are facts, and the deduction to be drawn from them is also a fact. There is then a distinction between what may be denominated circumstantial facts and inferred facts. If there be no conflict or contradiction in the circumstances given in evidence, the appellate court may judge of the inference to be drawn from them as well as the trying court. If there be nothing in the estimation of the trying court, either in the manner or character of the witness who testifies to the circumstances, and no evidence adduced to shake his credit, then the circumstances given in evidence are proved facts, which may be fairly certified as such by the trying court; but if there be a conflict in the evidence given, or some of the witnesses are unworthy of credit, then the trying court cannot certify, that all the circumstances given in evidence are proved fads, but it may from the mass of evidence certify what facts are in its opinion proved, and the appel *141 late court will judge from that certificate, -whether the , . . new trial was properly granted, or refused.
The case of Carrington v. Bennett, afforded an opportrinity of discriminating between circumstantial and inferred facts. It was debt on a bond, and the defendant pleaded, that the bond was given for money won of him by unlawful gaming at cards. The evidence on the part of the plaintiff, was the bond alone. The defendant could not prove by a witness, that that identical bond was executed for the gaming consideration, but he gave in evidence certain circumstances, and acknowledgments of the plaintiff, from which the fact of the vicious consideration might, or might not, be inferred. There was no conflict or contradiction in the evidence given of those circumstances, and they were therefore certified as having been proved, that is, they were certified as facts. The jury, however, did not from them infer the fact, of the illegal consideration of the bond, but made the opposite inference, and the trying court refused to grant a new trial. But the appellate court, being of opinion that the fact in issue was properly and irresistibly deducible from the circumstantial facts admitted and proved, reversed the judgment, and directed a new trial.' In so doing, the court seems- to me not to have departed from Bennett v. Hardaway, but to have carried it into effect. If the trying court had contented itself with merely certifying the fact which it inferred, there would have been no mode of correcting the error of an improper inference deduced from admitted and proved facts, and there would have been no use whatever in signing a bill of exceptions in which the inferred fact alone was inserted.
Next came Ewing v. Ewing. There, the bill of exceptions did not purport to state the facts proved before the trying court, but the evidence given; and it seems at first sight to be in opposition to the two former cases; but I am satisfied, from the best reflection I can give to *142 the subject, that the discrepancy is more in form than . ... ... . . . _ . m principle. Although the evidence only was given, yet there was no conflict or contradiction in any part of it, and the appellate court was not called on to decide on the credit of the witnesses. Their credit was not impugned, and their evidence was admitted to be true. The defendant gave evidence in support of his pleas, and the verdict was in his favour, and the trying court refused a new trial. The appellate court decided, that, throwing out of view the plaintiff’s evidence, and admitting all of the defendant’s to be true, his defence was not supported. In that view of the case, the appellate court had the same lights which shone upon the trying court. Evidence admitted to be true, seems to me to be in nowise different from facts proved. I think that this court properly reversed the judgment, and granted a new trial.
The case now before us is very much liké that of Ewing v. Ewing, as to the character of the bill of exceptions. It does not state the facts which were proved, but gives us the evidence on which the plaintiff relied to maintain his action. That evidence is not contradictory in itself; and the defendant gave no evidence. We must then take the evidence of the plaintiff to be true, and we must consider all facts fairly deducible from that evidence, as facts proved. We have the same lights to lead us to a just conclusion that the circuit court had, for we are not called on to weigh evidence, nor to judge of the credit of witnesses.
In examining the evidence set out in the' bill of exceptions, I have taken up a strong impression, that it may be fairly inferred from the evidence, that, although Ross did not assign, yet he transferred to Ashby, the judgment against Towles, for the purpose of applying so much of the proceeds of it, as might be necessary to pay the debt due from Ross to Ashby, evidenced by the fee bills; that, consequently, Green was liable to Ashby *143 in the equitable action for money had and received to _ -in 1-1 1 • the use ox Ashby; and therefore, that there is no error in the judgment. But all the rest of my brethren have formed decided opinions to the contrary; and though my impressions are not entirely removed, I yield to their better judgment, and do not deem it necessary to state the grounds of my impressions.
Carr, J.
This case comes before us, upon a refusal of the court below to grant a new trial, and an exception taken to that refusal, spreading all the evidence, not the facts proved, on the record. In Carrington v. Bennett, this court decided, that the only effect of Bennett v. Hardaway was, that a party shall not be permitted so to frame his bill of exceptions as to refer the credit of the witnesses to the appellate court; and that where there was no conflict, and of consequence, no question could arise as to the credit of witnesses, the appellate court would consider an exception well taken, which spread the whole evidence, instead of the facts proved, upon the record. In Ewing v. Easing, this opinion was again considered as correct, and acted upon. According to these decisions, we must receive the exception here, as well taken, for the evidence is all on one side, and there cannot be a question of the credit of witnesses.
Does the evidence shew a clear case of mistake in the jury and court below? Are the verdict and judgment clearly contrary to law and evidence ? For, unless there be clear error upon one of these points, I should be against disturbing the judgment. After the best examination I can give the case, I am compelled to say, that I think there is clear error; that the verdict was contrary to evidence, and against law. Ross had a judgment against Towles: Green was the attorney of Ross, and in that character received this money on an execution; but, before he paid it over to Ross, he received notice that Ashby claimed it as assignee of Ross. *144 To support his claim, Ashby produced fee bills to the amount of 72 dollars due to him as sheriff, from Ross, which he said had never been paid him. He' also produced a mutilated paper, of which no sense can be made in its present form, but which is claimed to be an authority from Ross to the plaintiff to prosecute and recover the judgment against Towles, without, however, passing any interest therein to him. He also proved by a deputy sheriff, that he at one time, had the management of the execution of Ross v. Towles: that for a time, Ross often applied to him for information, down to about 1824: that the plaintiff told him this execution was for his benefit, but never shewed him any assignment: that he did not know, that Ross was ever aware that the plaintiff claimed an interest in the judgment: but, after the time'the plaintiff claimed the judgment, Ross made no more applications to him for information. He proved by another witness, that about two years before the money was recovered, the plaintiff employed him to prosecute the claim against Towles's estate, telling him it was for his benefit; but this witness never saw any assignment, and did not know that Ross was aware of the plaintiff’s claim: and that, a short time before the action of debt on the judgment against Towles, which was in Ross's name, was tried, the defendant told him he was employed by Ross, to assist him in the management of the cause. This was the evidence: and to me it seems, that allowing it the utmost weight that in fairness can be claimed for it, it proves no transfer of this debt, either legal or equitable, from Ross to Ashby, nor any ground for an inference of such transfer. Ashby said it was his, but, surely, this, without assent or even knowledge of the claim by Ross, could prove nothing. Ashby produced an account against Ross; but, whether just or unjust, due or paid off, it could operate no transfer of this particular debt. Ashby produced a paper, but so mutilated that no meaning can fairly be placed *145 upon it; and give it all the meaning claimed, it is a mere authority, uncoupled with any interest, to collect the money. Could such proof as this authorize Green, •who was employed by Ross specially to attend to this case for him, to pay this money to Ashby? Could it create that privity which is necessary to support an action ? Suppose Ross had given Ashby an order on Green for the money, and Green had refused to pay; would not the resort have been upon Ross? Could Green have been sued upon an order which he refused to accept ? And if not upon such an authority from his client, surely he is not more liable, when he holds the money for his client, or pays it over to him, refusing to pay it to this adversary claimant. Who was the legal owner of this judgment? All must admit that Ross was, even if he had assigned it, since judgments are not legally assignable. What legal right, then, could Ashby have to call upon Green for the money? There could not be two legal adverse claims on him at the same time.
Cabell, J.
I am clearly of opinion, upon the authority of the cases of Carrington v. Bennett and '.Ewing v. Ewing, that the exception to the opinion of the court overruling the motion for a new trial, was properly taken, there being no conflict in the testimony, which was all on one side, and against the party tendering the exception: and that, in such a case, it is competent to this court, and it is its duty, to deduce from the testimony all such inferences of fact, as the jury might have deduced from it. I am also of opinion, that the evidence does not prove, either directly or by fair inference, any right in Ashby to the money received by Green. Giving to it all the latitude which can be justly claimed, it proves no assignment or transfer of the debt to Ashby, but only an authority to receive it. Therefore, when Green received it, he received it as Ross's money, not as Ashbfs.
*146 Brooke, J.
If we are to decide this case on the evi- , ............ . dence set out m the bill oi exceptions, I must concur m the opinion of my brothers Cabell and Can-, that the verdict of the jury was wrong, and that.the circuit court erred ih refusing to set it aside, and direct a new trial. But I confess, I do not understand the case of Bennett v. Hardaway, as it seems to have been understood by this court, in the two cases (in which I did not sit) of Carrington v. Bennett and Ewing v. Ewing. I understand the principle of Bennett v. Hardaway to be, that this court cannot review the verdict of a jury, and the judgment -of the trying court refusing a new trial, on mere evidence stated in a bill of exceptions, because it cannot have the same lights from evidence on paper, which the court below had from viva voce testimony; but that on facts certified by the judge as proved, this court may review his judgment on the law of the case so stated. Neither do I understand, that it was, in that case, considered material, whether the evidence stated in the bill of exceptions was contradictory or not. Judge Roane, indeed, in delivering the opinion of the court, remarked, as a circumstance which fortified the objection to the bill of exceptions, that the evidence was contradictory ; but it was not intended, that it should be implied from that remark, that this court would, in any case, entertain an appeal'from a judgment of an inferiour court, upon a statement of evidence in a bill of exceptions, disregarding the preference óf viva voce testimony to evidence on paper; on the contrary, I think it quite clear, from many passages of the opinion of the court, that no such inference was intended. Thus, speaking of the trying court, judge Roane said—“ That court, while it can faithfully transmit to this, the actual words spoken by the witnesses, can give no fac simile of the manner of testifying, the hesitation or partiality manifested on the trial, or the like. With respect to these important circumstances, as they relate to the *147 weight of testimony and credibility of witnesses, this . . . . , , , court is altogether m the dark: the advantages are exclusively confined to the court of trial.” Now, the circumstances, that there is no contradictory evidence set out in the bill of exceptions, and that the evidence set out is entirely that of one party, either the exceptor or his adversary, do not obviate these objections. And there is another objection, which I think more important, as it is founded in the very nature of our appellate jurisdiction—that this court is required to, review the judgment of the court of trial, not. on the facts which that court deduced from the testimony before it, but on the facts deduced by this court from the evidence, which was before the court of trial, stated on paper; thus reviewing the decision of that court, not on the law of the .case as it appeared to it to be proved by the testimony, but on the law of the case as it appears to this court to be proved by the evidence on paper; in other words, reviewing the judgment of the court of trial, not on the law, but on the facts, of the case. This is in contravention of the opinion of the court in Bennett. v. Hardaway, where it is said—“It is an important principle, that the revising court should have the same lights, and act upon the same data, as the inferior^ court. This is always so, where the case depends upon a ques-tion of law; for that question being permanently spread upon the record in the trying court, is carried up to all the revising tribunals. It is a further principle equally important, that where this advantage is wanting in the revising court, the judgment of the court below will preponderate. On this principle this court acted in the case of Chaney v. Saunders, 3 Munf. 51. On this principle, it is held, in England, that a new trial will be granted after a trial at bar, rather than after trials at nisi prius, because the former founded upon what appeared to the whole court, whereas the latter is founded on the opinion of p single judge;” 1 Burr. 394. I am *148 at a loss to reconcile with these principles, the subsequent adjudication of Ewing v. Ewing. In that case, on a motion for a new trial being overruled, all the evidence given at the trial on both sides, was stated in a bill of exceptions; and the appellate court, excluding all the evidence of the party against whom the verdict was found, and admitting the truth of all the evidence of the party for whom it was found, held the verdict contrary to evidence and to justice, set it aside, and ordered a new trial; thus, treating the bill of exceptions exactly as a demurrer to evidence ; a practice, which must end in the trial of every case over again in the appellate court, upon a bill of exceptions stating the whole evidence on paper, not in reviewing the judgment of the inferiour court on the law of the case, as the facts appeared to it to be proved by the testimony. In short, Ewing v. Ewing presents a new mode of trial, not to be found in any of the books, and more congenial with the civil than the common law. In the case now before us, I think it impossible, that the jury or the circuit court could have taken the same view of the viva voce evidence which was before them, that they would have taken of the evidence stated for us on paper in this bill of exceptions. As to the distinction which has been taken, between evidence of facts, and inferences from facts and circumstances proving facts, which, it is said, this court is as competent to draw as the jury or the court below, there would be something in it, if such inferences were matter of law, and not of fact: but such inferences are matters of evidence, and depend much on other evidence in- the cause, which is admitted to be the peculiar province .of the jury, and of the court of trial, upon the viva voce testimony, to weigh and decide. It is an appeal from the judgment on the facts, and not on the law, which the distinction requires this court to entértain. This, I think, is not justified by the authority of Bennett v. Hardaway, though it is by that of Carrington v. Bennett and Ewing v. Ewing.

*149
Tucker, P.

The first question in this case, brings up the often debated point, as to the proper form of a bill of exceptions, on the refusal of a motion for a new trial. It seems to be agreed on all hands, that it is not competent for the appellate court, in a case of conflicting testimony, to revise and reverse the opinion of the court and jury, touching the credit of the witnesses. In such case, therefore, the party who takes the exception must have the facts, as contradistinguished from the evidence, spread upon the record, for the judgment of the appellate court. When this is done, the question presented is, whether the jury has erred in the inferences drawn from the facts proved, or in matter of law as arising out of those facts ; and thus, where the court of trial concurs with the jury, no other question can fairly be brought before the appellate tribunal in a case of conflicting testimony. From this view of the matter, we may deduce the rule, that no bill of exceptions is properly taken, which submits to this court, conflicting evidence, upon the credit of which we must decide, before we can pronounce upon ''the judgment of the inferiour court. And for a like reason, though the evidence be all on one side, yet if that which is introduced is adduced by the excepting party, the bill of exceptions is not properly framed, if it recites the evidence which was given, instead of setting forth the facts; for, peradventure, the court and jury may have disbeJieved the witnesses, and if so, this court could not interfere. This was the case in Carrington v. Bennett, in the opinion of one of the judges. There was no conflicting evidence on the real matter of litigation between the parties. All the evidence to that point, was on the side of the ex-ceptor, and as the court and jury both decided against him, this court could not, upon its own principles, have overruled their opinion upon the weight of the evidence, unless the facts as proved were duly stated. In this the whole court very obviously concurred, though the *150 mai'ority were of opinion, that the question of the truth . . , . , . , oi the evidence was not submitted, but that the facts were properly certified. I coincide in that opinion. All that the rule 'requires, is, that the appellate tribunal be absolved from the decision of the question whether the testimony is true or untrue. And where the bill of exceptions states, as it did in Carrington v. Bennett, that “ the witnesses.proved” so and so, and that “ these were all the facts proved in the cause,” this court must take it, that the matter stated was proved to the satisfaction of the court.
In the case of Ewing v. Ewing, the question presented itself in another shape. The party excepting did not rest upon his own evidence, but contended that, admitting the truth of all the evidence adduced by his adversary, it was not sufficient to maintain his plea, and entitle him to a vérdict. And the court decided, accordingly, that the bill of exceptions was sufficiently taken, although it did not purport to set out the facts proved, but only detailed the evidence which had been given. In this opinion I concur; for the reason of the rule has no application, where the evidence is only on the side of the successful party; since, in such case, the exceptor may safely he considered as admitting its truth, which is equivalent to its being set forth as matter proved in the cause. Nor is there any hardship in this. The exceptor cannot complain, since he must either submit to an affirmance by reason of the informality of the bill of exceptions, or submit to the inferdnce that his adversary’s evidence is incontrovertibly true. And the successful party cannot justly complain, that the court considers his evidence as equivalent tó indisputable facts. The modification of' the rule of Bennett v. Hardaway, which is effected by the case of Ewing v. Ewing, seems to me essential to justice : for, surely, it would be grossly wrong to refuse to correct the error of the court, below in refusing a new *151 trial, where it is plain, that the proof exhibited by the plaintiff; admitting it to be true in every tittle, established no cause of action.
Such I conceive to be the case at bar. The testimony is all on one side, and is against the exceptor. Admitting it to be true, it neither establishes the facts necessary to charge the defendant, nor justifies such inferences as might go to charge him. And I agree; in the opinion expressed by judge Green, that although this court cannot review the opinion of the court below as to the weight of evidence, it is its duty to correct the false inferences which may be drawn from facts that have been proved; 1 Leigh 347.
In the case before us, there are two counts ; the first a general indebitatus assumpsit, the second a special count. This latter is clearly not sustained by the evidence ; for it sets forth a debt of 200 dollars, and an assignment of part of the debt of Towles, which the defendant had received from the sheriff; whereas the evidence fails, I think, in proving either the original debt to Ashby, or an assignment to him for hi s own use of the judgment against Towles, though it does, indeed, conduce to prove an authority to collect it, but for whose use wo know not, except that, in the absence of evidence, it must be taken to be for Ross’s use. This count is moreover altogether defective, and inter alia, in omitting to set out that Green received on the judgment enough to pay Ashby’s demand. Then, as to the general count: this presents the question, whether the evidence establishes any right of action against the defendant. I am of opinion that it does not. To sustain the action, it was at least necessary to prove, that Green had received the money, that the plaintiff had the best right to it, and that Green had either not paid it over, or had notice not to pay it. I think the proof is essentially defective on the second point. I do not think a jury could fairly infer .from the existence of the *152 fee bills, made out no one knows when, for services performed very many years ago, that Ross was Ashby’s debtor at all. And still less could they infer a transfer of the judgment against Towles for the purpose of paying such debt. The mutilated fragment produced by Ashby, so far from proving an assignment for any such purpose, uses the terms “ hereby authorized to prosecute and recover,” without any words pf appropriation to Ashby, and thus shews only an authority, without establishing an interest, or shewing an assignment. Without proof of such assignment, moreover, the receipt of the money by Green was an authorized act, as it would seem, he was one of the attorneys of record. And in that view of the case, it might fairly be questioned whether he would be liable to Ashby for having paid over to Ross, even though it should appear that Ashby was equitably entitled to the money. For it is difficult to admit, either that an attorney can retain his client’s money upon notice of a claim to it by a stranger, or that the question of Ross’s right could be fairly tried in an action against Green. On the other hand, if there was an assignment, if the money really was Ashby’s, if he brought the suit, if he employed other counsel than Green, to recover the amount in Ross’s name,' the suit was his suit, and the introvention of Green, at the instance of Ross, could not have given him authority to receive the money from the sheriff, as Ross’s agent. In that state of facts, with notice of Ashby’s rights, he w'ould perhaps have been hable to the action of Ashby, as the receipt would have been in-officious ; though the difficulty would still exist, as to the competency of a suit against Green, to try the right of Ross to the money in question. It is not necessary to go into this question here, and I therefore waive it, only referring to the following authorities, as bearing upon these questions; Robson v. Eaton, 1 T. R. 62. Butter v. Harrison, 2 Cowp. 566. Sadler v. Evans, 4 *153 Burr. 1984 Travis v. Claiborne, 5 Munf. 435. Mires v. Solebay, 2 Mod. 242. 1 Bac. Abr. Assumpsit. A. 260. 261. It is sufficient for this case, to say, that the foundation of the plaintiff’s action is wanting. The assignment is not proved, nor can it be fairly inferred; and without such proof the case is defective in all points.
Judgment reversed, and a venire de novo directed.