Baldwin, J.
The exercise in actions at law, of appellate jurisdiction, upon questions determined by the discretion of the subordinate tribunal, is attended with much difficulty. That discretion, of course, involves the consideration of all the circumstances of the case, and consequently, though it may bo guided, it cannot be absolutely governed, by fixed and peremptory rules. The difficulty is especially great in relation to motions for new trials. The jury are the constitutional triers of questions of fact; and no appeal lies from their decision. It is not competent for the Court, before which the trial is had, to reverse the verdict of the jury, and render one of its own instead of it. The only power of the Court is to set aside the verdict, and direct a new trial to be had before another jury; a power which is exercised when the case seems to require it, in order to prevent gross injustice, or to preserve obedience to the law ; or to maintain the authority of the Court in its exposition of the law to the jury; or where from fraud or surprise, a fair trial has not been had upon the merits. The Court may grant a new trial where the verdict is contrary to law or to evidence; but the duty of doing so is not in all cases imperative. There are various considerations which may be brought to bear upon its discretion ; such as the doubtful character of the question, the hard or unconscionable nature of the action or defence, the belief that the verdict conforms to the substantial justice and equity of the case, the trifling value of the matter in controversy, and others that might be mentioned.
Much respect is due to the opinion of the jury, whose province it is to weigh conflicting evidence, to scan the credit of witnesses, to estimate the force of circumstances, probabilities and presumptions, and to canvass intention and motives. This is so evident, that the Courts habitually defer to the conclusions of juries upon matters of fact, though opposed to their own; and hence *24 the familiar rule, not to disturb a verdict, unless in a case plain deviation from the evidence. In truth, it is this habitual forbearance and self-restraint, which enables the Courts not unfrequently to sustain verdicts that attain substantial justice, though unwarranted by close deduction, or rigid analysis, or strict adherence to legal principles. The books are full of such cases, and the idea has been carried to great lengths in oppressive or iniquitous actions or defences. I will cite one case only, for the sake of illustration.
Wilkinson v. Payne, 4 T. R. 468, was an action on a promissory note given to the plaintiff by the defendant, in consideration of the plaintiff’s marrying his daughter; and the case turned upon the question, whether there was a legal marriage. There was a marriage in fact, but under circumstances which rendered it illegal ; and the action could only be sustained by the presumption of a subsequent legal marriage, of which there was no evidence, though the fact might have been easily proved, if it had occurred, and all probabilities were against it. The jury, however, presumed that a subsequent legal marriage had occurred, and found a verdict for the plaintiff. A new trial was refused by the Court of King’s Bench, and Lord Kenyon, Chief Justice, said : “ In the case of new trials, it is a general rule, that in a hard action, where there is something on which the jury have raised a presumption agreeably to the justice of the case, the Court will not interfere by granting a new trial where the objection does not lie in point of law. This rule is carried so far, that I remember an instance of its bordering on the ridiculous; where, in an action on the game laws, it was suggested that the gun with which the defendant fired, was not charged with shot, but that the bird might have died in consequence of the fright; and the jury having given a verdict for the defendant, the Court refused a new trial.”
*25 There is surely a fair presumption in favour of the correctness of a verdict; and when the Judge who presides at the trial, who has heard all the evidence, and witnessed the proceedings and manner of conducting the cause before the jury, is satisfied with the verdict and refuses a new trial, a supervising authority where it exists, but which of course cannot have equal opportunities of forming a just judgment, ought not to interpose without the strongest reasons for so doing. On the other hand, when the Judge is dissatisfied with the verdict and grants a new trial, some latitude must be allowed to his discretion; especially where the propriety of its exercise is affirmed by a verdict on such new trial for the party to whom it was granted. In England when a cause has been tried at nisi prius, the application for a new trial must be made before the Judges of the Court in bank, which acts upon the relation or certificate of him who presided at the trial; and his opinion is in a great degree decisive, for it is pretty much a matter of course to overrule the application when he expresses himself satisfied with the verdict, and to grant it when he expresses himself dissatisfied.
Neither the common law, nor the Stat. of Westm. 2, in regard to bills of exception (substantially adopted into our code), was ever supposed by the English Courts to give appellate jurisdiction upon the question, whether the discretion of the Court below was improperly exercised by granting or refusing a new trial. And I suppose such an idea would never be entertained under any judicial organization copied from that existing in England, where the jury trials are chiefly had in the nisi privs Courts, before Judges of the Courts of Westminster, in causes pending in the latter, to which the verdicts are returned, and where the application for the new trial must be made, and is founded upon the report or statement of the Judge who presided at the trial. But where, as in the system of Virginia, and that of the *26 United States, the verdict and judgment are rendered in the same Court, the opinion of the Judge who presided at the trial, must be decisive and final upon the motion for a new trial, unless it can be reviewed in an appellate forum by a writ of error. The Supreme Court of the United States has repudiated the exercise of such appellate jurisdiction as improper and mischievous. Young v. Black, 7 Cranch 565; but it has been assumed and established by the appellate Courts of Virginia.
- It must be admitted that if the question of granting or refusing a new trial is to be treated as a matter of discretion, an appellate forum is but ill adapted to its safe and correct decision. In that aspect, any tribunal by which the question is to be decided, ought to have before it all the circumstances of the case in full developement, all the details of the evidence without subtraction or diminution, and thorough information of the exact credit and weight due to the testimony of the several witnesses. All this the Judge who presides at the trial has the best opportunities of acquiring: but how is it to be transferred to paper and carried to the appellate forum ? Let those conversant with jury trials give the answer.
But if the question is to be treated as a matter of right, or imperative obligation, then it is obviously unnecessary to bring to the view of the appellate Court the details of the evidence, or the minute circumstances of the case; and the doing so, in whatever shape or form, can only tend to embarrassment and confusion; in like manner, though not to the same extent, as if introduced into a special verdict, or the declaration and other pleadings upon which an issue is made up.
What ought to be the frame of a bill of exceptions to a decision of the Court below upon a motion for new trial, was brought to the consideration of this Court, for the first time, in the case of Bennett v. Hardaway, 6 Munf. 125; and in that case this Court expressed the *27 opinion that the bill ought not to state all the evidence given to the jury on the trial, but only the facts appearing to the Court to have been proved, by the evidence. The ground of that opinion appears to have been, that it is not competent for the appellate Court to “revise and reverse the opinion of the Court below, on a question touching the weight of the evidence and the credit of the witnesses;” and that if this were otherwise, it would have to do so “ in the dark, or at least with lights inferior to those possessed by that Court.” But that where the facts only are stated, it is competent for the appellate Court to revise and reverse the opinion of the Court below founded on those facts j by doing which it does not depart from or overrule the decision of the latter Court as to the weight of testimony, or the credit due to any witness, nor bring the whole matter again into controversy.
The authority of Bennett v. Hardaway lias been recognized by all the subsequent cases, and its true construction and import, I take to be, that the proper function of the bill of exceptions is to present to the appellate Court, not the weight and credit, but the legal effect of the evidence. By the legal effect of the evidence, I mean its effect to determine the issue one way or the other. This does not necessarily involve the discussion of a point of law, but the application of the law, however plain and unquestionable, to the ascertained facts; and so presenting the question whether, upon the facts stated, the verdict, on the issue joined, ought to have been for the plaintiff or the defendant. The idea of an exercise of discretion on the part of the Court below is thus excluded, and its decision placed upon the ground that the verdict, upon the facts admitted or proved to the satisfaction of the Judge, was right or wrong. In this point of view, the office of the bill of exceptions, when properly framed, is precisely that of a demurrer to evidence, as will be seen by a brief consideration of the nature of that proceeding.
*28 A demurrer to evidence is a proceeding by which the Court is called upon to declare what the law is upon the facts shewn in evidence, analogous to the demurrer upon the facts alleged in pleading. It withdraws from the j Ury the application of the law to the facts, the truth of which it of course admits. It is proper where the evidence is in writing, and therefore not admitting of any variance ; or where the parol evidence is certain, but not if it be loose and indeterminate, or circumstantial; unless the demurrant will admit the facts which such evidence may legally conduce to prove. If, however, the adverse party voluntarily, or in obedience to the Court joins in the demurrer, then every fact is to be considered by the Court as admitted, which a jury could fairly infer in his favour from the evidence demurred to. And the Court will if they can, give judgment upon such evidence ; but otherwise a venire de novo must be awarded. 2 Tidd’s Pract. 791, 794; Cocksedge v. Fanshaw, 1 Doug. 119; Gibson & Johnson v. Hunter, 2 H. Bl. 187, 205; Young v. Black, 7 Cranch 568; 1 Rob. Pract. 404. According to the principles of the common law and the English practice, no evidence ought to be stated in the demurrer but that offered by the adverse party; but in Virginia, by an innovation now fully established, the demurrer may state the evidence on both sides; but where the evidence adduced by the demur-rant is contradictory to that of the opposite party, the effect of the demurrer is to admit the truth of the latter, or which is the same thing, to waive the demurrant’s conflicting evidence. 1 Rob. Pract. 351, 352; Green v. Judith, 5 Rand. 1; Hansbrough’s errors v. Thom, 3 Leigh 147.
Thus I think it will be seen that a bill of exceptions, when properly framed, to a decision of the Judge, upon a motion for a new trial, founded on the allegation that the verdict is contrary to evidence, is in substance and effect a demurrer to evidence; but it is a demurrer to *29 evidence after verdict. This is strictly true where the Judge grants a new trial; and it is virtually so where he refuses it, for the case is not brought before the appellate Court until after a verdict against the exceptor upon the new trial. As a demurrer to evidence it is moreover anomalous in this, that it is taken, not for the consideration of the Court in which the cause is tried, but for the judgment of the appellate Court.
The bill of exceptions is not, however, properly taken, unless strictly confined to the facts proved by the evidence ; for if any opening is left by the introduction into it of evidence, as contradistinguished from the facts, the supposition that the cause may have turned before the jury upon the credit and weight of the evidence, and so have furnished room for the discretion of the Court, the appellate forum will not interfere with what may have been an exercise of that discretion. To do so, would, 1 apprehend, much impair the value of jury trials.
The question of new trial is thus placed, it seems to me, upon the best footing it can be before the appellate Court, after we have surmounted the difficulty of assuming jurisdiction of the subject at all. We avoid, to some extent, the evils of renewed and protracted litigation upon mere matters of fact, and keep separate as far as practicable the appropriate respective functions of the jury, the presiding Judge, and the Court of Errors. If the plaintiff in error is subjected to some disadvantages by being treated as a demurrant to evidence, they are only such as he ought to encounter after a verdict and judgment against him in the Court of trial.
This Court, it is true, has held the principle of Bennett v. Hardaway inapplicable in three cases, where the bill of exceptions did set forth the evidence of the witnesses, instead of the facts admitted or proved. But in one of those cases, Green v. Ashby, 6 Leigh 135, no part of the evidence was adduced by the exceptor, but the whole of it by the adverse party, and was utterly *30 inadequate; and in the other two, Ewing v. Ewing, 2 Leigh 337, and Rohr v. Davis, 9 Leigh 30, by rejecting all the evidence for the exceptor, and giving the fullest credit and force to that of his adversary, the verdict was clearly wrong. These decisions are justified by the principles of a demurrer to evidence, which, by allowing to the adverse .party every inference and presumption deducible from the evidence, is equivalent to the strongest statement of the facts against the demurrant.
In the case before us, an action on an indemnifying bond, the issue substantially was, whether the property levied on belonged to the principal defendant in the execution, or to the relators of the plaintiff as trustees for another; and on the trial before the jury, the merits of the question turned upon the fairness and validity of the trust deed, under which the relators claimed, given by the principal defendant in the execution, to secure an alleged creditor of the grantor. The evidence was altogether on the part of the plaintiff, and consisted of the indemnifying bond, the execution and return thereon, the trust deed, the obligation for the debt thereby secured, and the parol testimony of several witnesses, of whom the most material one was the principal debtor in the execution and grantor in the deed.
The execution issued on a judgment of the Superior Court, affirming a judgment of the County Court, on a forthcoming bond executed by the principal debtor and his surety therein. The deed of trust bears date a few days before the issuing of the execution, and conveys the grantor’s slaves, horses, cattle, sheep and hogs, his farming utensils, household and kitchen furniture, and other personal property, including fifty barrels of corn; to secure a large sum of money with interest thereon, of which payment was not to be enforced for nearly ten years, during which time the debtor consequently was to be entitled to the possession and enjoyment of the property. The obligation for the money is unattested by *31 any witness, and the only evidence of its execution was proof of its being altogether in the handwriting of the obligor.
Let us suppose that the cause had stood before the jury upon this written evidence alone, and the same verdiet had been rendered; would it have been error in the judge to refuse a new" trial ? In this aspect, the case would be that of an embarrassed debtor defeating his judgment creditor, shortly before process of execution, by a conveyance of his property, a considerable portion of it perishable in its nature, and some of it consumable in the use; which conveyance secured to himself against his creditors the use and enjoyment of the property for a long period of time. It has been argued that this was nothing more than a preference given to one creditor over others, who might still subject the property, though their executions could not be levied upon it, by filing a hill in equity to redeem; and that in no point of view could they be injured, inasmuch as the property was not worth enough to satisfy the trust creditor, who might have agreed, instead of taking the incumbrance, to receive the property in discharge of his debt, to which there could be no plausible objection. The answer is, that the transaction seems to indicate something more than a mere preference given to one creditor over others, as the effect of the deed is to secure to the debtor an important benefit to himself; that the fact of his being a creditor is itself questionable, there being no proof of the consideration of the obligation, or the period at which it was written and signed, matters by no means immaterial upon the question of fraud; that other creditors would at least be hindered or delayed by the necessity of filing a bill to redeem; that the only evidence of the val ue of the property is the sheriff’s return of his sales under the execution, not embracing the whole properly, and at best but a fallacious criterion, and that if a sale to a preferred creditor in discharge of his debt, would have been *32 unobjectionable, it is a matter proper for consideration why the transaction did not assume that character.
I will not say that the circumstances disclosed by this written evidence, render the transaction in point of law fraudulent per se, inasmuch as it would be difficult to prescribe the limit of indulgence to be given in a trust deed, or the period for which it may cover perishable property. But I cannot doubt that here is pregnant evidence of a fraudulent intent to defeat, hinder or delay creditors of the grantor, which required satisfactory explanation, and which unexplained, would warrant a jury in finding a verdict against the plaintiff, or sustain a judgment against him upon a demurrer by him to this his own evidence. If the contrary proposition be established as law, and the juries and Courts prohibited from deciding in favour of an execution creditor under such circumstances; that, it seems to me, would be giving an unlimited charter to fraudulent debtors.
It was deemed expedient on the part of the plaintiff to give the explanation, and accordingly the attempt was made, by examining the debtor himself as a witness before the jury. He was a competent witness, but surely the credit and weight of his testimony were, under the circumstances, open to much observation ; and the matter of it, as will be seen by reference thereto, by no means exempt from stringent commentary. To avoid prolixity, I forbear remarking further upon it. It was the province of the jury to pass upon the truth and force of his evidence. They have done so ; and it is not competent for their Court to review this decision in relation thereto, directly or indirectly.
But it is argued that the evidence of the witness is verified by the bill of exceptions, and that the matters stated by him must be taken as facts proved in the cause. This, in the nature of things, cannot be so. It is true it does not appear that the general character of the witness was impeached, or that he was contradicted by any *33 other witness, and it may be admitted that his evidence was not incompatible with the written evidence in the cause; but still his testimony was impeached by that written evidence, for that tended to one conclusion, and the testimony of the witness to the opposite; and there is no evidence more dangerous, or which requires closer scrutiny, than that of a witness to whom the circumstances of the case impute misconduct, coming in with a knowledge of those circumstances, to explain them away and remove the imputation. The presiding Judge could not if he would, certify to the truth of such a witness; for he would have to certify either that the jury believed him, which he could not know, or that they ought to have believed him, which it was not competent for him to know. And being satisfied with the verdict, there is every probability against his attempting such a certificate. He might, it is true, have certified that, he believed the witness; but that would be wholly irrelevant to the merits of the question, unless as a justification, if it had been a flagrant case, for the exercise of his discretion, setting aside instead of approving the verdict. Moreover, it would be a novel idea to introduce into the administration of justice, that a Judge is bound to state in a bill of exceptions the reasons for his opinion, further than the facts of the case themselves indicate. He is surely not obliged, in certifying the evidence of a witness, to assume directly, or by implication, the invidious task of testifying against his veracity; and he may have formed no opinion on the subject.
Whether a judge means to certify the testimony of a witness, or the facts which he proves in the shape of evidence, is a matter that depends more upon the substance than the form of the bill of exceptions. If it appears therefrom that the evidence is contradicted by other evidence, or impeached, or under the circumstances in any wise subject to impeachment, whether successfully or not; the matter of it, however certified, cannot *34 be treated as facts proved before the jury. The mere form of the certificate is extremely fallacious, as is exemplified by the case of Jackson’s adm’rs v. Henderson^ g Lejgh 196, in which a verdict was rendered subject to t^e opinion of the Court upon the facts agreed between the parties; but what was called the facts agreed, was a statement of the evidence on both sides, with an admission of the facts stated in the evidence ; which evidence, appeared in some respects, variant and conflicting : and it was held, that the Court could give no judgment upon the verdict, which was set aside, and a venire de novo awarded.
But here even the form of the certificate is nothing to the purpose. The bill of exceptions does not profess in any part of it to state the facts proved on the trial. It commences by stating, that on the trial, the plaintiff introduced a deed, &c. and so proceeds with the indicium of “ also,” through the written evidence, and with the like indicium “ also a witness,” through the parol evidence, introducing that of the witness in question thus: “ also a witness, Charles Irving, the grantor in the said deed of trust, who proved,” &c. giving his testimony at length, and concluding the whole statement thus, “ and this being all the evidence in the cause,” &c.
The case cited of Carrington v. Bennett, 1 Leigh 340, is not authoritative, being the decision of a divided Court of only three Judges; and is not in point, there being no shadow of imputation there against the witness, and the certificate concluding,” and these being all the facts proved in the cause.”
I am therefore of opinion, that the bill of exceptions in the case before us, is not well taken; and moreover, that even if it could be garbled by throwing out of view so much of it as relates to the parol evidence, and then relying upon the statement of the written evidence alone, (the propriety of which I much question in a case like the present,) still that the legal effect of the evi *35 dence justified the jury in finding the issue joined for the defendant. And, if I were wrong in this, I would yet say, that the utmost case made by the bill of exceptions, is one in which it cannot be determined, whether the conclusion from the evidence ought to have been one way or the other; so that upon a regular demurrer to evidence, it would be proper to award a venire de novo, that the doubt might be resolved by the verdict of a jury; and here there is no need of that, a verdict having already been found, which resolves the doubt against the exceptor.
My opinion is, that there is no error in the judgment of the Circuit Court.
Allen, J. concurred in affirming the judgment.