SAMUELS, J.
In my opinion it appears with sufficient clearness that the account of Crawford’s administration on the estate of John C. Sowers, and the books of Crawford, respectively, afforded evidence relevant *to the issue, and were therefore improperly excluded from the jury. I deem it unnecessary, in this ease, and therefore improper, to express an opinion whether a judgment in any case should be reversed unless error appears in the proceedings ; or whether a judgment should be reversed because the record leaves it doubtful whether the court below did or did not err. With this explanation, I concur with Judge Moncure in reversing the judgment; agreeing fully with him in regard to the other questions.
LEE, J. I agree that upon the issue joined in this cause enquiry into the pecan *200 iary circumstances and condition of the defendant in error at the date of the paper writing in question, was strictly relevant and germain; and if -the rejection of the settlements said to have been made by Crawford as executor of Sowers, as evidence in this case, was only .to be justified by holding that such enquiry was impertinent or irrelevant, or if the action of the court as disclosed by the first bill of exceptions, is properly to be regarded as an instruction to the jury to that effect, I should have little difficulty in holding that error had been committed for which the judgment should be reversed. But there is a distinct ground upon which, as I understand the rule, to be deduced from the later cases on the subject, the rejection of these settlements must be sustained in this court. The witness William B. Crawford, in testifying as to the sources from which, as he supposed, the defendant in error might have derived the means to make the supposed loan, professed to speak from memoranda taken upon a recent examination of books kept by him in the year 1845. This applies, as I understand the statement, as well to what he testified in reference to the estate of Sowers as to what he stated in regard to the other resources which Crawford had at command. Now, oral evidence of the *contents of the books referred to was clearly inadmissible without the production of the books themselves; nor could the witness be permitted to speak as to the facts noted upon them unless he had a knowledge or recollection of them as distinct from the entries; though he might refer to the latter for the purpose of reviving his knowledge or refreshing his recollection. 1 Starkie Ev. 390; Ibid. 128; Doe ex dem. Church v. Perkins, 3 T. R. 749; Henry v. Lee, 2 Chitty’s R. 124, 18 Eng. C. L. R. 273. Thus, all the evidence as to Sowers’ estate, derived from the books referred to, might have been readily excluded, if the plaintiff in error had made this objection; and if the settlements of the accounts of that estate would have been otherwise irrelevant, ,the3r cannot be admitted in evidence, if objected to, because improper evidence had been given without objection on the part of the plaintiff in error or with his consent. For one party’s consenting to the admission of incompetent testimony for his adversary, is no reason for admitting other incompetent testimony in favor of the party so consenting, where objected to on the other side, even although the latter might serve to explain or contradict the former. Wilkinson v. Jett, 7 Leigh 115; Unis v. Charlton, 4 Gratt. 58; Stringer v. Young’s lessee, 3 Peters’ R. 320.
But supposing no question could have been made as to the competency of the evidence in relation to Sowers’ estate, or that the witness gave other testimony independently of the books, tending to show that the defendant in error might have had means at his command derived from Sowers’ estate, this would not necessarily render the settlements of the. accounts of that estate admissible in evidence. Their admissibility would depend upon their relevanóy; and this of course refers to the nature and character of their contents. When examined, these might be found to be *relevant or wholly irrelevant. They might tend to meet the testimony of the witness Crawford, by showing that he could not have the control of funds to any large amount from that source, or they might fail to shed any light whatever upon the question of the means he had at command. But what state of facts they would disclose, we are not informed. They are not made a part of the bill of exceptions, so that the court can inspect them and judge whether they would be relevant or otherwise; nor does the bill of exceptions state their purport or what they would prove if received in evidence. Now it cannot be sufficient ground for reversing a judgment that evidence was excluded which might or might not have been relevant to the issue. On the contrary, it has been expressly decided by this court that when it is alleged error has been committed , in excluding proper and relevant testimony from the jury, it is incumbent on the party seeking to reverse a judgment for this cause, to show that error has been committed: And to this end the evidence offered and rejected must appear to have been relevant from the statement of the evidence alone; or if the relevancy of the evidence depends on other facts, the party alleging the error must present such a case on the record as shows its relevancy. And if the testimony does not appear of itself or upon the facts stated in the record, to-have been relevant, it will be held in the appellate court to have been properly excluded. Rowt’s adm’x v. Kile’s adm’r, 1 Leigh 216; Carpenter v. Utz, 4 Gratt. 270; Johnson’s ex’x v. Jennings’ adm’r, 10 Gratt. 1.
I am aware there are certain cases from which it might seem to be deducible that the practice in such a case, where the bill of exceptions fails to show the relevancy of the evidence rejected, is to reverse the judgment and remand the cause for a new trial. Fowler v. Lee, 4 Munf. 373; Hairston v. Cole, 1 Rand. *461. I conceive, however,- the later cases. above referred to establish a different rule, one more conformable to general principle, and in more strict analogy to the settled practice of the court in the case of ai motion for a new trial where the bill of exceptions sets out the evidence instead of the facts proved in the cause. Bennett v. Hardaway, 6 Munf. 125; Deems v. Quarrier, 3 Rand. 475; Carrington v. Bennett, 1 Leigh 340; Ewing v. Ewing, 2 Leigh 337.
Without, therefore, entering into the reasons which may have weighed with the court in rejecting these settlements, I think it a sufficient answer to the objection to-say, that enough is not shown by the bill of exceptions to enable this court to see that they furnished relevant testimony, *201 and to say that the Circuit court erred in pronouncing them irrelevant.
Nor do I think the action of the court, as disclosed by the bill of exceptions, or the opinions which it expressed, should be regarded as an instruction to the jury that enquiry into the pecuniary circumstances of Crawford was not germain to the matter upon which they were called to pronounce. It is true, in delivering its opinions excluding the settlements of Sowers’ estate, the court said that the evidence offered by the defendant was “too vague, remote and indefinite” in its character to sustain the plea of non est factum against such positive evidence of the genuineness of the signature to the bond. But this remark was not addressed to or intended for the jury. It was made upon a point which had been expressly withdrawn from their consideration, and submitted to the judgment of the court. It was intended to explain to the counsel the reasons of the court for rejecting the testimony. It may not necessarily have been heard by the jury or all of them. The presence of the jury is not necessary during the discussion and decision of a question of law arising incidentally before the court *during a trial, and advantage is frequently' taken, in practice, of the occurrence of such a question to permit jurors to withdraw; and sometimes the discussion and decision take place before the jury are called to take their seats after a recess of the court.
But even if this remark is to be regarded as having been heard by the jury, and if, standing alone and unexplained, it might have had an improper influence upon their minds, enough occurred immediately after-wards and in the same connection, to prevent any such consequence. Tor the court formally and expressly declined to give an instruction in conformity with the opinion thus expressed: and this refusal to give such an instruction must be supposed to have engaged the attention of the jury equally with the opinion itself so incidentally expressed; and it served to admonish them that the opinion of the court upon the point of the exclusion of testimony was not to influence them in their deliberations upon the question of fact submitted to their decision. Surely it cannot be imputing too high a degree of intelligence to the jury to suppose that w'hen the court formally declined to declare to them, as a matter for their guidance, what it had previously intimated, though incidentally, in giving an opinion excluding testimony, they would at once see that that opinion was not intended for them, and was to have no weight in their consideration of the case. Moreover, the court formally instructed the jury that they were bound to weigh and consider all testimony introduced by either party; and that it was competent for the defendant to show, by evidence as to the circumstances, relations and business of the parties, and by their whole conduct in connection with the bond in controversy, that it was either impossible or improbable that it was the act and deed of the defendant’s testator. So far, therefore, from the instruction given by the court amounting to a ruling which excluded *enquiry into the pecuniary circumstances of Crawford, it directly and in terms authorized the jury to make such enquiry.
It cannot be important to the ends of justice, nor will it tend to promote its due administration, but rather to obstruct it, to hold that an opinion expressed by a judge on the trial of a cause, perhaps not well considered, or touching a matter upon which it is the province of the jury to pass, but upon an incidental question arising in its progress, and not intended for or addressed to the jury, should be deemed to have the force and sanction of an express instruction, and to require a reversal of the judgment; especially, too, where enough occurred at the time and in the same connection to guard against the consequences of the inadvertence, and to leave the jury to form their own judgment. Such, I think, may fairly be considered the character of the present case, and in this respect it very much resembles the case of Brooks v. Calloway, 12 Leigh 466. That was an action of slander. During the trial the court had ruled that the plaintiff might read the bill and answer in a cause in .which his deposition (the truth of which had been impugned by the words imputed to the defendant), had been taken, for the purpose of showing the materiality of the deposition to the matters in issue. The defendant insisted that not the bill and answer only, but the whole record should be read. The court-permitted the bill and answer to be read alone; and the judge said that if the whole record should be introduced, it would prove that the defendant was a slanderous man, from the efforts made in that cause without success, to impeach the character of so many witnesses who had testified against him: but he at the same time told the jury, that the statement so made by him touching the contents of the record, had nothing to do with the case, and should not be regarded by them in their decision. *In delivering his opinion, in which the other judges concurred, Judge Allen said, “The expression used by the judge in excluding these depositions, was not intended for the jury. So he informed them, and that it should not be regarded by them as anything in the decision of the cause. Nothing is more common than an instruction to the jury to disregard evidence improperly admitted. The jury are presumed to possess ordinary intelligence, and to be able to discriminate between what is proper for them to consider in forming their conclusions, and what, though occurring in their hearing, is no part of the case. Here the court did all it could to correct the inadvertence into which it had fallen.” In this case the court did not in so many words tell the jury that the remarks which had fallen from it were not intended for their consideration, and *202 should be disregarded by'them, but taking all that was said and done by the court at the time together, I think it was about equivalent.
But it is urged that the remark of the court accompanying the instructions to the jury was improper and objectionable, because it trenched upon the proper province of the jury, and might have had an improper influence upon them.
To say of instructions asked for b3r counsel, that they were “clearly correct as abstract propositions,” might, perhaps, convey by implication, to the mind of a lawyer, though probably not to that of a jury, the idea that there was no evidence which could give the principles of law, thus propounded, a.ay application to the case. But if we are even to suppose that the jury would necessarily understand that such was the opinion of the court, still the court did not act upon that opinion, by refusing to give the instructions, but expressly gave them as propounding the law correctly; and adding, “that it might be safely left to the jury to determine how far they were applicable to the facts *and evidence in the cause.” Giving to the language of the court, then, its fullest import, it would seem to amount to no more than this, that although the court might perhaps in strictness refuse to give the instructions, yet as the3r propounded the law correctly, they could do no injury, and it might be safely left to the jur3r to say how far the facts and evidence in the cause called for their application. Thus interpreted, the remark of the court cannot afford any serious cause of complaint, though it was perhaps unnecessary, and might well have been omitted.
Another ground of error assigned is the refusal of the court to permit the recall of the witness W. B. Crawford, and the renewal of his cross examination, and to require the production of the plaintiff’s books, for the purpose of testing the accuracy of his statements. The witness had been cross examined on the day before, and the counsel had announced that they had concluded the examination of witnesses, but might on the following day offer some documentary testimony. Now, after a witness has been examined and dismissed, whether he may be recalled and re-examined is a matter within the sound discretion of the court; and this court cannot so well apprehend and appreciate all the circumstances which should weigh in the exercise of that discretion as the Circuit court might; and unless, therefore, it be plainly shown to have been unduly and improperly exercised, this court should not interfere. Nothing of the kind is shown here. No reason was assigned why the examination of the witness had not been completed before he had been dismissed; no mistake, or oversight or after discovery suggested; but the recall appears to have been claimed as a matter of right, to enable the party to test the accuracy of his statements by reference to the plaintiff’s books. No notice or rule had been given for the production of these, nor had they been produced, *though it is stated they were within one hundred yards of the court-house; and it ma3T be inferred their production was onty then desired in case the party could be permitted to recall the witness. I think, therefore, whether the evidence that might have been educed by the recall of the witness and the production of the books, would be relevant or otherwise, this court cannot undertake to say that rhe Circuit court improper^ exercised its discretion in refusing to recall the witness, or erred in failing to require the production of the books in that connection.
The paper referred to in the third bill of exceptions was, I think, ver3r properly rejected by the court. It was a tender of his consent by the defendant to the production and use of the plaintiff’s books as evidence on the trial, upon certain conditions therein stated, accompanied by the reasons which he thought proper to assign for making the offer. If he desired to have those books on the trial, the law pointed out the mode in which their production could .be enforced; this proposal to the plaintiff to produce and use them on the condition named, was entirely gx'atuitous, and the plaintiff had a perfect right to accept or decline it, as he might think proper. Nor was any presumption to be raised against him ixi any sense or for any purpose, if he chose the latter alternative. Tlie offer having beexi made but declined by the plaintiff, there I think was the end of the matter, axid the offer and nonacceptance, either with or without the reasons which the party chose to assign for making the offer, could not be made legitimate evidence in the cause for any purpose whatever.
I am of opinion to affirm the judgment.
MONCUREJ, J. This action was brought upon an instrument purporting to be the bond of John McDowell to Hugh J. Crawford, in the sum of “two thousand *dollars, for borrowed money;” the whole of which, with the endorsements of credits thereon, except the signature of the obligor, was admitted on the trial to be in the handwritixig of the obligee. The bond was unattested by any subscribing' witness. The only issue in the case was on the plea of non est factum. The obligee, to sustain the issue on his-part, introduced a number of witnesses, who testified that they were well acquainted with the handwriting of the said McDowell, and believed the signature to the bond to be his true and genuine signature. He also introduced two receipts, in his own handwriting, purporting to be receipts for interest on the bond; and introduced testimony to show that they were found in the house, and among the papers, of said McDowell, after his death. And here the obligee closed his evidence in chief. The executor of McDowell, to support the issue on his part, without offering any opposing testimony as to the genuineness of the signature *203 to the bond, introduced evidence as to the circumstances, relations and business of the parties, and their conduct in connection with the bond in controversy, tending, in the opinion of his counsel, to show that it was not the act and deed of said McDowell, either because the signature thereto was not genuine, or if genuine, ’the bond was obtained fraudulently or otherwise, in such an illegal manner as to render it not his act and deed. In the evidence so introduced by McDowell’s executor, there was evidence tending to show that the obligee had not the pecuniary ability to make a loan of the amount and character evidenced by the bond in controversy, and that he could not, at the date of the bond, have had such an amount of money, for any purpose. To rebut the evidence of the defendant as to the. pecuniary condition of the plaintiff at the date of the bond, the plaintiff introduced a witness, who testified, among other things, that the plaintiff had the *control of a large estate of John C. Sowers, of whom he was executor. To meet this evidence, the defendant offered to introduce the settlements made by the plaintiff of his accounts as executor of John C. Sowers, to show that at the date of the bond in controversj', the plaintiff could not have had funds of that estate in his hands, sufficient of themselves, or with his own means, to have enabled him to make such a loan as that shown by the bond; and also to show that the plaintiff, as legatee and devisee of that estate, and deriving his whole property from that source, could not possibly have had the amount of available funds stated by his said witness. To the introduction of these settlements, as evidence, the plaintiff’s counsel objected, as irrelevant to the issue; and the coart, sustaining the objection, refused to permit them to go to the jury. The defendant excepted; and this exception presents the first question which we have to decide in this case.
It is true, that the .plea of non est factum to an action of debt upon a bond, puts in issue only the validity of the bond; and no evidence is relevant to the issue, or admissible, that does not tend to prove or disprove that the bond is the act and deed of ! the alleged obligor. If the defendant wishes to rely for his defense on any want or failure of consideration, or fraud, (unless it relates to the execution of the instrument; as if it be misread to the party, or he did not intend to sign such an instrument,) he must plead the matter specially, or apply for relief to an equitable forum. The evidence introduced by the defendant as to the circumstances, <%c., of the parties, was introduced not to show any want or failure of consideration, or any fraud on the part of the plaintiff antecedent to, or independent of the execution of the bond, but to show that the supposed bond was not the act and deed of the defendant’s testator: And if it tended in any degree to show *that fact, it was relevant and admissible evidence to be weighed by the jury. I think ¡ the evidence did tend to show that fact, and that it was therefore relevant and admissible. If authority were necessary to show the relevancy of such evidence, the cases of Sides v. Schnebly, 3 Harr. & McH. 243, and Rowt’s adm’r v. Kile’s adm’r, Gilm. 202, cited by the counsel for McDowell’s executor, would, I think, be sufficient for the purpose. But the Circuit court in this case conceded the relevancy of the evidence in the instructions given to the jury, which will be hereafter noticed. This evidence of the defendant being admissible, and the plaintiff, to rebut it, having introduced testimony tending to show that he derived the means of making the loan for which the bond purports to have been given, or part of it, from the estate of Sowers, of whom he was executor; the question is, whether the settlements of his accounts as such executor, which the defendant offered to introduce to meet the said testimony of the plaintiff, were not admissible for that purpose? I am of opinion that they were, and therefore, that the court erred in excluding them. It may be said that the evidence being documentary, should have been inserted in the bill of exceptions, according to the case of Hairston v. Cole, 1 Rand. 461. But the only reason for inserting the document in the bill of exceptions is to enable the appellate court to see whether it is relevant evidence. If its relevancy otherwise sufficiently appears upon the record, its insertion in the bill of exceptions is not necessary. Archer v. Archer’s adm’r, 8 Gratt. 539. In this case I think the relevancy of the evidence which was excluded is sufficienly apparent on the record. The question upon which it was offered was whether the plaintiff could have derived from the estate of Sowers, of whom he was executor, and also a devisee and legatee, the sum of two thousand dollars, *or any part of it, alleged to have been loaned by him to the defendant’s testator on the 18th of March 1846? Upon this question, it seems to me, the settlements of the accounts of the plaintiff as executor of Sowers must necessarily shed some light. Indeed, the Circuit court seems not to have excluded these settlements because they did not shed light upon that question, but because it considered all the testimony of the defendant ‘ ‘too vague, remote and indefinite in its character, to sustain the plea of non est factum, against such evidence of factum, as the plaintiff had introduced;” and the court would have excluded all of the said testimony if it had been objected to; but as it was not, the court only excluded the settlements aforesaid which were objected to. No matter how favorable they may have been to the defendant’s side of the question, in regard to which they were offered, the court considered them inadmissible, and -therefore excluded them: and this accounts for the failure of the court to insert them in the bill of exceptions. In Hairston v. Cole, supra, the document offered was a copy; and it did not appear from the bill of excep *204 tions that the copy was duly authenticated. In this ^case the settlements themselves, and not a copy, appear to have been offered as evidence. The settlements had probably been made in the Circuit court; or if in the County court, the originals may have been offered.
But even if the admissibility of these settlements as evidence, be not sufficiently apparent on the record, and they should therefore have been inserted in the bill of exceptions, I think the Circuit court erred in not inserting them; and the judgment must, on that ground, be reversed, according to numerous and uniform decisions of this court, of which that in Hairston v. Cole is directly in point. The principle of these decisions is, that when an opinion of an inferior court *admitting or excluding evidence, or giving' or refusing an instruction, is excepted to, the court must take care so to state the case in the bill of exceptions as that the appellate court majr supervise the opinion, and determine whether it is right or wrong: otherwise, the judgment must be reversed in order that the case may be correctly stated. Therefore, the judgment must always be reversed where the bill of exceptions to an opinion of the court, admitting or excluding evidence, is defective in not setting out the evidence admitted or excluded. The cases of Fowler v. Lee, 4 Munf. 373; Hairston v. Cole, 1 Rand. 461; Raines v. Philips’ ex’or, 1 Leigh 483; Bowyer v. Chestnut, 4 Leigh 1, are cases in which exceptions were taken to the admission or exclusion of evidence. Barrett & Co. v. Tazewell, 1 Call 215; Beattie v. Tabb’s adm’rs, 2 Munf. 254; Brooke v. Young, 3 Rand. 106, are cases in which exceptions were taken to instructions given or refused by the court. In all these cases the judgments were reversed on the ground that the statement of facts in the bill of exceptions was too imperfect to enable the appellate court to determine the question. The same course was pursued in Thompson v. Cumming, 2 Leigh 321, where the instruction excepted to was so .ambiguously and imperfectly expressed, that the appellate court could not collect the import and bearing of the opinion complained of.
I know of no case in this court which is inconsistent with this uniform course of decision. There may be one or two apparently so, but when strictly scanned they will be found to be otherwise. The case of Rowt’s adm’x v. Kile’s adm’r, 1 Leigh 216, is one of this class. That was a suit upon a bond, and the issue was on the plea of non est factum. An exception was taken to the exclusion of the evidence of a remark of Richard Rowt (no party) that his pen had not forgot to write. There was no ground laid connecting this with the issue, no *conversation stated, which led to or followed the remark; nothing to show how it could possibly bear on the case: And Judge Carr said, “I cannot think that so light and trivial and unconnected a remark should induce us to send back a case, where there have been two trials, in both of which the jury have found the same way.” He had previously, it is true, made the general remark, that ‘ ‘when we are called on to reverse the decision of a judge, it is incumbent on the party seeking this, to show that there is error; and to this end he ought to. present to us such a case as shows the relevancy of the evidence rejected.” But that remark must be referred to the case under consideration; in which it did not appear that the facts were imperfectly stated in the bill of exceptions. Hon constat that there was any evidence which connected the ‘‘light and trivial” words of Richard Rowt with the case. The conjecture that there might have been such evidence, was not a sufficient reason for reversing the judgment, and sending the case back for a third trial. If there was such evidence, the party seeking the reversal of the judgment ought to have presented such a case as to have shown it. In that case, as before remarked, the bill of exceptions is perfect on its face. In this case defect, if any is apparent on the face of the bill of exceptions, consists in not setting out the settlements therein stated to have been offered as evidence. Judge Carr certainty did not intend, by anything which he said in that case, to controvert the principle of the decisions to which I have referred; for he had expressly admitted that principle, and followed the authority of the earlier decisions in the case of Brooke v. Young, 3 Rand. 106. The case of Carpenter & wife v. Utz, 4 Gratt. 270, is another of the class before referred to. There the judgment was affirmed, because the evidence stated in the bill of exceptions as having been excluded by the court below, *was, standing by itself, clearly irrelevant and inadmissible; and there was nothing to show that it had any connection with the case. It presented precisely the same question which was presented by the case of Rowt’s adm’x v. Kthe’s adm’r: and Judge Allen, in delivering the opinion of the court, uses substantially the same general remark which was used by Judge Carr, as before stated, ‘‘that where it is alleged that error has been committed in excluding proper and relevant testimonj7' from the jury, it is incumbent on the part3r seeking to reverse a judgment for this cause, to show that error has been committed.” But, as in that case, this remark must be referred to the case under consideration ; and then it will be consistent with all the other decisions on the subject. That it was intended to be so referred, plainly appears b3r what immediately follows in the same sentence, viz: ‘ ‘and to this end the evidence offered and rejected must appear to have been relevant from the statement of the evidence alone; or if the relevancy or irrelevancy of the evidence offered depends upon other facts in the cause, the party alleging the error should present such a case on the record as shows the relevanc3‘ of the evidence rejected.” The court ought not to reverse a judgment upon a mere conjecture that there may have *205 been other evidence showing the relevancj7 -of that stated in the bill of exceptions. The difference between the two cases is like the difference between a defective case, and a case defectively stated. In the one case the appellate court, so far as appears from the record, has the same question before it which was passed upon by the court below, and may therefore revise the decision of that court. In the other, the appellate court has not the question passed upon by the court below fairly before it, and must therefore remand the case, that a more perfect statement may be made. The cases in which exceptions have been *taken to opinions of the court overruling motions to set aside verdicts on the ground that they were contrary to evidence, form a peculiar class, resting on peculiar reasons, and are not in conflict with the principle before stated. Such opinions may, in Virginia, be revised by an appellate court; brit, generally, only where the facts, and not the evidence, are certified by the court below : And If the evidence, instead of the facts, be certified, the appellate court will, generally, on that ground decline the supervision of the opinion, and affirm the judgment. It will not remand the case for a more perfect certificate, because non constat that such a certificate could be made. There may have been a conflict of evidence, or it may have been complicated, or come from witnesses of doubtful credibility; and the court below may have been unable or unwilling to weigh the evidence, and determine and certify the facts.
In delivering the opinion excluding the evidence before mentioned, the Circuit court stated, “that upon the issue in this cause the plaintiff having introduced ten witnesses, all of whom swore positively to the genuineness of the signature to the bond, It was sufficient evidence, the bond being found in possession of the plaintiff, from which the jury should presume sealing and delivery, and due execution thereof, unless met and overthrown by opposing testimony on the part of the defendant; and that as the defendant had fathed to introduce any opposing proof as to the genuineness of the signature, all the other testimony introduced by him without objection, as well as that now objected to, was too vague, remote and indefinite in its character to sustain the plea of non est factum against such evidence of factum as the x'laintiff had introduced, and would have been excluded if objected to; but as it was not, all the court could do was to exclude that *now objected to.” The defendant excepted to this opinion of the court pronounced concerning the evidence already introduced by him; and the question now arises, whether the court erred in giving the opinion; and if so, svhether, on that ground, the judgment ought to be reversed?
It is a fundamental maxim, that the court responds to questions of law, and the jury to questions of fact. The court must decide as to the admissibility of evidence, that being a question of law; but not as to its weight after it is admitted, that being a question of fact. The cases in this court in affirmance of this position are too numerous to be cited. Most of them are collected in 1 Rob. Pr. 338-344. As the author says, they “evince a jealous care to watch over and protect the legitimate powers of the jury. They show that the court must be very careful not to overstep the line which separates law from fact. They establish the doctrine that where the evidence is parol, any opinion as to the weight, effect or sufficiency of the evidence submitted to the jury; any assumption of a fact as proved; or even an intimation that written evidence states matter which it does not state, will be an invasion of the province of the jury.” Berry v. Ensall, &c., 2 Gratt. 333, is a case on the same subject, which occurred after the xmblication of that work. There may be others, but it is unnecessary to cite them, as they all, I believe, tend to sustain the same doctrine.
There can be no doubt, I think, but that the opinion in question is in conflict with this doctrine. The court declared that the evidence of the defendant as to the circumstances, relations and business of the parties, and their conduct in connection with the bond in controversy, which was admissible evidence, and was so considered and had been admitted by the court, was *too vague, remote and indefinite in its character to sustain the xdea of non est factum against such evidence of factum as the plaintiff had introduced.
The court here weighed the plaintiff’s evidence of factum against the defendant’s evidence of non est factum, and decided the question of preponderance in favor of the former. If the court had given this opinion to the jury in the shape of an instruction, it would clearly have been such an invasion of their province as to have required the reversal of the judgment. But had not the expression of the opinion in the course of the trial, and in the presence of the jury, the same effect? Had it not at least a strong tendency to influence the minds of the jury? I think that it certainly had. It is the duty of the jury to be governed by the opinion of the court on questions of law arising in the course of the trial; and they will naturally and properly attend to and respect every such opinion, however it may be expressed to them; whether in the form of an instruction or not. The more intelligent and upright the jury, the more apt they will be to x)urs1lc this course. They are unlearned in the law, and cannot be expected to know the precise line which divides their province from that of the court. It will not do, therefore, to say that when the court, by the expression of any opinion, crosses the line and invades their province, they may and ought to disregard the opinion and weigh the evidence for themselves. The same may be said in every case in which the court gives an opinion to the jury on the weight of evidence. In the case of Gregory v. Baugh, 2 Leigh 665, the Circuit *206 court, in a charge or instruction to the jury, stated matters as being a written deposition, ahd instructed the jury that that matter was legal evidence; but in point of fact no such matter was in the deposition: It was held that this was calculated to mislead the jury, and was error for which the verdiet should be set aside, *and the judgment reversed. The court, consisting of four judges, was unanimous in this decision. It was argued with great force that it was impossible the charge could have deceived or misled the jury: The depositions were before the jury; the cause turned chiefly on them; they were doubtless the subject of minute examination and discussion at the bar; and it was to be presumed they were carried by the jury from the bar into the jury room, read there, and considered. “It was said,” answered Judge Carr to this argument, that “the jury would read” the affidavit “for themselves, and not take the court’s version of it. This they might do, as in any other case where the court undertook to instruct them on the weight or effect of evidence, they might disregard such an instruction ; yet it would be error in the court to give it.” Judge Green said, “The instructions were calculated to mislead the jury, more or less, by inducing them to believe that the court was of opinion that such was the effect of the depositions.” Judge Cabell concurred with Judge Green. And Judge Brooke said, the objection to the instruction is not “obviated (as was argued by counsel) by the circumstance that the evidence was in writing, and would be seen by the jury, who might correct the mistake of the judge.” In that case the mistake of the court was as to a mere matter of fact, and could have been corrected by merely reading the' deposition, which it was the duty of the jury to do, and which, therefore, they probably did; and yet, because they may have been misled by the statement of the court, the judgment was reversed. In this case the court weighed the evidence, and pronounced an opinion upon it, and the error, if any, could not be so easily corrected.. It is the ordinary case of an opinion of the court as to the weight, effect, or sufficiency of evidence submitted to the jury; which is a good ground for reversal of a judgment according *to all the authorities. Such an opinion is certainly calculated. to mislead them, whether it be communicated to them in the form of an instruction, or be merely expressed by the court in their presence, in the progress of the trial. In either case, they are authentically informed of the opinion, and it must have an influence upon their judgments; probably as much in the one case as the other; but whether the same, or more or less, the principle involved is not affected.
It may be said that it does not certainly appear from the record that the opinion of the court was expressed in the presence of the jury. I think the fact sufficiently appears from the record. The presumption is that the jury is present during the whole progress of the trial. It may sometimes happen that the jury may be temporarily absent during the discussion of a question 'of law arising in a case: But this rarely occurs; and when it does occur, the party interested in the fact should take care to-have it stated on the record. In the absence of such a statement, the appellate court will presume that that occurred which generally, rather than that which very rarely, occurs. The statement in the bill of exceptions tends strongly, if not conclusively, to show that the jury were present when the opinion was expressed. The opinion was excepted to; which would not have been done, if the jury had not been present and heard the opinion; or if it had been done, the court would have certified that the jury were not present when the opinion was expressed; for that fact would have shown that the defendant was not prejudiced by the opinion. It was not intimated in the argument of the case in this court that the jury did not hear, or might not have heard the opinion. It may, therefore, be safely assumed that they did hear it.
I do not think the error^ of the court in giving the opinion was cured by not excluding the evidence from *the jury. The court -would have excluded it, if a motion had been made for that purpose; and so declared. The error consists in giving an opinion of the weight, effect, or sufficiency of evidence submitted to the jury.
Nor do I think the error was cured by the instructions which, on the motion of the defendant, were given by the court to the jury before they retired to consider of their verdict. Those instructions were:
1. That the jury are bound to weigh and consider all testimony introduced by either party without objection, unless upon a motion made to the court, such evidence is excluded.
2. That upon the issue in this cause, it is competent for the defendant to show, by-evidence as to the circumstances, relations and business of the parties, and by their whole conduct in connection -with the bond in controversy, that it is either impossible or improbable that the bond sued upon is the act and deed of the defendant’s testator.
If the force of these instructions had been undiminished by any accompanying remark of the court, they would merely have declared to the jury their obligation to weigh the evidence before them, and the competency of the defendant, by such evidence, to maintain his plea of non est factum; and would not have obviated the effect of the opinion previously expressed as to the insufficiency of the evidence. Whenever a court gives an opinion upon the weight, effect or sufficiency' of evidence submitted to the jury, it would no doubt also, if required, instruct them that it is their duty to weigh the evidence: but surely such an instruction would not remove the influence of the opinion, which would still remain *207 unretracted, notwithstanding the instruction.
But the court accompanied these instructions with the remark, that they were clearly correct, as abstract propositions of law, and that it might be safely left to *the jury to determine how far they were applicable to the facts and evidence in the cause. The meaning of the court in this remark is perfectly intelligible. when taken in connection with the opinion previously expressed, and must have been understood by the jury. Instead of being a retraction, which might have cured the error, it was a reaffirmance, of that opinion. It was a strong intimation, if not an express declaration, that the propositions of law embodied in the instructions were mere abstractions, having, in the opinion of the court, no sufficient foundation in the evidence to give them practical effect. The remark that it might be safely left to the jury to determine how far they were applicable to the facts and evidence in the cause, does not mend the matter; for the jury had just in effect been informed that the instructions had no application to the facts and evidence in the cause, which in the opinion of the court were wholly insufficient to sustain the issue on the part of the defendant.
The case of Brooks v. Calloway, 12 Leigh 466, does not affect this case. There the judge made a statement in regard to the contents of a record which was not in evidence ; but he at the same time told the jury that the statement had nothing to do with the case, and should not be regarded by them as anything in their decision of it. The inadvertence was corrected as soon as it was committed. The difference between the two cases is too palpable to require further remark.
In regard to the question presented by the second bill of exceptions, that is, whether the court erred in refusing to permit the plaintiff’s witness William B. Crawford to be recalled, or to require the production of the plaintiff’s books, which were then within one hundred yards of the court-house: Two reasons are assigned by the court for the refusal: 1. That the evidence would not be relevant to the issue; and 2. That the defendant’s counsel had, on the evening *before, announced that they had concluded the examination of witnesses, as stated in the first bill of exceptions.
In regard to the first reason: The plaintiff, to prove his ability to make the loan to the defendant’s testator, introduced the witness above named, who testified that he was the book keeper of the plaintiff in his mercantthe establishment up to November 1845; and that at the time the plaintiff was in possession of a large amount in cash-notes, and accounts, of his own property, which had not been known to any of the witnesses who had testified as to his circumstances. The witness professed to speak from memoranda taken upon a recent examination of the books kept by him in 1845. I think this statement of the case, with what has been already said in answer to the questions presented by the first bill of exceptions, is sufficient to show that the books were relevant and admissible evidence for the purpose for which they were proposed to be introduced. They were referred to by the plaintiff’s witness, who spoke .from memoranda taken from them; and they were the best evidence of what they contained; and were easily accessible.
In regard to the other reason assigned by the court: Although the practice of our courts has been liberal in allowing parties, after their evidence is closed, to recall witnesses for the purpose of supplying facts omitted from inadvertence; and although I think such permission should be given wherever there is no ground to suspect improper practice; the object being to elicit truth, and secure the attainment of justice: yet I am aware that the judge, before whom a case is tried, must necessarily have larger room for discretion on this subject, and I think an appellate court should seldom interfere with its exercise. In this case I he judge would doubtless have permitted the witness to be recalled and have required the production of the books, *if he had considered them relevant evidence. Moreover, it may be said that though the defendant’s counsel had, on the evening before, announced that they had concluded the examination of witnesses, yet they also announced that they would probably, on the next day, offer documentary evidence; which they accordingly did, but it was excluded by the court. The exclusion of this evidence may have been a reason for the motion made immediately thereafter by the defendant’s counsel, io have the witness recalled and the books produced; and ought, I think, to have had some f effect in inducing the court to sustain the motion. I am of opinion that the court erred in overruling it.
In the cases of Stringer v. Lessee of Young, 3 Peters’ R. 320; Wilkinson v. Jett, 7 Leigh 115; and Charlton v. Unis, 4 Gratt. 58, it was decided that the introduction of irrelevant or incompetent evidence by one party without being objected to by the other party, or with his assent, does not authorize the latter to introduce such evidence. This doctrine is reasonable; but does not, I think, affect the question I have just been considering. It does not appear that the memoranda taken by the witness from the plaintiff’s books, were exhibited as evidence before the jury, or even that he had them before him when he gave his testimony. He professed to speak from them; and seems to have used them merely for the purpose of refreshing his recollection of facts within his personal knowledge. If they had been exhibited before the jury, they would not.have been irrelevant, but merely secondary, evidence; to which the other party might have objected because secondary, and required the production of the books themselves as primary evidence: But he was not bound to make such objec *208 tion; and not having made it, the evidence, which was before relevant, would then have become competent, and he might counteract its effects by the production of the books or any other *legal evidence. If the memoranda were merely referred to by the witness to refresh his memory, that fact could certainly be no good reason for refusing to require the production of the books, which were not only relevant, but primary evidence.
In regard to the question presented by the third and last bill of exceptions : I think the court properly excluded the evidence therein mentioned. If the defendant wished to use the plaintiff’s books as evidence, the law provided ample means to enforce their production; and not having chosen to pursue those means, he had no right to resort to other means, and prove the plaintiff’s refusal to comply with them, in order that inferences to the prejudice of the plaintiff might be drawn by the jury from the fact of such refusal.
Upon the whole, I am for reversing the judgment, setting aside the verdict, and remanding the cause for a new trial to be had therein.
DANIEL, J., concurred in the opinion of Moncure, J.
ALLEN, P., concurred in the opinion of Lee, J.
Judgment reversed.