# WHEELING.

## STATE OF WEST VIRGINIA v. LOWE.

Submitted June 22, 1883—Decided June 30, 1883.

1. The twelfth section of chapter 152 of the Code of West Virginia in so far as it authorizes a crime to be prosecuted and punished in a county, in which the offense was not committed, when the crime was committed within one hundred yards of the boundary-line of the county, is unconstitutional, null and void, it being in conflict with article III. section 14 of our Constitution. (p. 786.)

2. A judgment will be reversed, where the court below in an instruction excepted to has assumed a material fact, unless the record shows affirmatively, that the fact so assumed was admitted expressly or tacitly, or that it was so fully sustained by uncontradicted evidence as to necessitate the inference that it was an undisputed fact. (p. 794.)

3. Where a person other than a regular judge has tried a case below, and no objection was made on the trial to his authority, and the record is silent as to the mode of his appointment or selection, no objection to his authority can be raised in the appellate court for the first time provided, that under the Constitution and laws he could have been elected or appointed to sit as judge in such case, as the appellate court will in such case presume, that he was legally elected or appointed. (p. 784.)

Writ of error to a judgment of the circuit court of the county of Calhoun, rendered on the 26th day of October, 1881, upon an indictment against Nimrod Lowe for a violation of the revenue laws by selling spirituous liquors without a license, allowed upon the petition of the State.

Hon. William E. Lively, special judge, rendered the judgment complained of.

GREEN, JUDGE, furnishes the following statement of the case:

The grand jury of Calhoun county, on February 22, 1881, on their oaths presented, that in July, 1880, in said county Nimrod Lowe did unlawfully and without a State license therefor sell, offer and expose for sale spiritous liquors, wine, porter, ale, beer, and drinks of a like nature. The defendant pleaded not guilty to this presentment, and on October

26, 1881, the jury found the defendant not guilty as alleged; and the court entered up a judgment thereon, that the defendant from further prosecution on this indictment be discharged and go thereof without day.

There is copied into the record what is called a bill of exceptions, there having been placed on the record-book a memorandum, that "upon the trial of this cause the State of West Virginia, by the prosecuting attorney of this county, tendered her bill of exceptions to certain opinions and rulings of the court given against her upon the said trial." This paper called a bill of exceptions is in the words and figures following:

"Be it remembered, that upon the trial of this cause, and after the evidence and argument of counsel had been fully heard, and before the jury had been instructed to retire to consider of their verdict, the prosecuting attorney having introduced evidence tending to show that the defendant had sold spirituous liquors, on the 3d day of July, 1880, in the county of Roane, but within one hundred yards of the boundary line between the counties of Roane and Calhoun, and the defendant having offered no evidence of a State license to him to sell spirituous liquors, wine or alcohol in either of the said counties, the prosecuting attorney moved the court to instruct the jury as follows:

"PLAINTIFF'S INSTRUCTION.

"If the jury believe from the evidence that the defendant sold spirituous liquors without having a State license therefor within one year next preceding the finding of this indictment, and within one hundred yards of the boundary line of the county of Calhoun, then the jury should find the defendant guilty, and assess his fine at not less than ten nor more than one hundred dollars.

"To which instruction the defendant, by his attorney, objected, and the court sustained the objection and refused to give the said instruction to the jury, and on the motion of the defendant, by his attorney, the court instructed the jury as follows:

"DEFENDANT'S INSTRUCTION.

"The court instructs the jury that inasmuch as the evi-

dence for the State shows that the offense was committed within the county of Roane, within one hundred yards of the county line of Calhoun county, and the indictment failing to show on its face that the offense was committed in Roane county, within one hundred yards of the county line of Calhoun county, they should find the defendant not guilty; further, that a conviction on the indictment in this case could not be pleaded in bar of a prosecution against the defendant for the same offense in the county of Roane.

"To which instruction the prosecuting attorney objected, but the court overruled the objection; to which opinion and rulings of the court in refusing to give the instruction asked on behalf of the State, and in giving the instruction asked on behalf of the defendant, the State, by her prosecuting attorney, excepted and tendered this her bill of exceptions, which is signed, sealed and ordered to be made a part of the record.

"Wm. E. Lively [seal.]"

The State of West Virginia by Robert G. Linn, prosecuting attorney of Calhoun county, presented a petition for a writ of error to said judgment, which was allowed by this Court on December 10, 1881; and the case was submitted to the decision of this Court on the argument of the counsel for the defendant in error only.

No appearance for the State.

*John M. Hamilton* for defendant in error relied upon § 14, Art. III. of the Constitution.

GREEN, JUDGE, announced the opinion of the Court:

The first question presented by this record is, whether this Court consider the bill of exception signed by Wm. E. Lively as a part of the record. This Court takes judicial notice, that Wm. E. Lively is not a circuit judge in this State. The record in this case begins thus: "Pleas before Honorable William E. Lively, elected and qualified a special judge of the circuit court of Calhoun county, held at the court house, on Wednesday the 26th of October, 1881." And the certificate attached to it is signed by the clerk of the circuit

court of Calhoun county and certifies, "that the foregoing is a full, perfect and complete transcript of the records of the proceedings had in said court in the case of the State of West Virginia against Nimrod Lowe."

So far as the record in this case discloses there is nothing to show how William E. Lively was appointed or by what authority he acted as judge; but the proceedings in the lower court are presumed to have been regular in this respect, unless the contrary affirmatively appears upon the record. It is only therefore incumbent on us to enquire, whether or not under any circumstances by the laws of this State, he could have properly acted as judge in the trial of this case. His election or appointment and regular qualification will be presumed, the record not showing anything to the contrary, provided such election or appointment and qualification to try the case were warranted by the Constitution and laws of this State. See *Sweeptzer* v. *Gaines et al.* 19 Ark. 96; *Vandever et al* v. *Vandever et al.* 3 Met. (Ky.) 137; *Feaster* v. *Woodfill,* 23 Ind. 493. We know that the regular term of the circuit court of Calhoun county in the year 1881 began on October 25, 1881, or should regularly have been commenced on that day, and therefore, that the 26th day of October, 1881, would have been or might have been during a regular term of said circuit court. Now in *The State of West Virginia* v. *Williams,* 14 W. Va. 851, syl. 1, this Court decided, that under the legislation of this State a special judge might be elected by the members of the bar to hold the *general* term of a circuit court, where from any cause the judge fails to appear or if present cannot preside, and that such legislation when applied to a general term of a court was constitutional. As this case was or might have been tried at a regular term, we must on the principles I have laid down presume, that Wm. E. Lively was legally and constitutionally elected and qualified as a special judge, and that he was authorized to try this case, nothing to the contrary appearing in the record, and that therfore the bill of exceptions signed by him constitutes a part of the record. So regarding it what was called the plaintiff's instruction was properly refused, for section 14 of article III. of our present Constitution, following in this respect section 8 of article II. of our

first Constitution, see Code of W. Va. p. 21, and Acts of 1883, p. 145, provides that: "Trials of crimes and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, *and in the county where the alleged offense was committed,* unless upon petition of the accused and for good cause shown, it is moved to some other county." And neither in our first nor in our present Constitution, nor in any amendment of it, is there any provision for the trial of such a misdemeanor as that, for which the defendant was prosecuted in this case, in any other county than the one, in which the alleged offense was committed.

This provision of our Constitution confers on a person accused of crime, with reference to the place where he is to be tried, the privileges, which the common law conferred on him, thus making these common law privileges of the accused constitutional rights, which the Legislature cannot take from him without his consent. There never has been a question as to the fact, that all the privileges conferred on the accused by these constitutional provisions were also conferred on him by the common law. For by the common law crimes of every description could only be prosecuted in the county wherein they were committed; but if an impartial trial could not be had in that county, the case might certainly be removed at the instance of the accused, and it might be perhaps at the instance of the State. But under the constitutional provision which we have cited it is obvious, that the venue can never be changed at the instance of the State without the consent of the accused; but as these constitutional privileges were conferred for the benefit of the accused they can be waived, and the venue can be changed on his motion or by his consent. See *Commonwealth* v. *Parker,* 2 Pick. 550; *State* v. *Potter,* 16 Kans. 80; *Dula* v. *The State,* 8 Yerg. 511; *Perteet* v. *The People,* 70 Ill. 171; *State* v. *Denton,* 6 Cold. 539; *Wheeler* v. *The State,* 24 Wis. 52. The provision of our Constitution above quoted would seem clearly to confer on the accused the right in all cases to be tried in the county wherein it is alleged, that the crime was committed, and it would therefore seem to follow necessarily, that any act of the Legislature, which permitted the State without the consent

of the accused to prosecute him in any other county than the one, in which the crime was alleged to have been committed would be unconstitutional, null and void.

The object of the constitutional provision is to protect the accused against a spirit of oppression and tyranny on the part of the government, and against a spirit of violence and vindictiveness on the part of the people; and also to secure the accused from being dragged to a trial at a distant part of the State, away from his friends, witnesses and neighborhood, and thus be subjected to the verdict of mere strangers, who may feel no sympathy, or who may cherish against him animosity or prejudice, and also to protect the accused from injustice arising from his inability to procure proper witnesses, and to save him from great expense. See *State of Minnesota* v. *Robinson*, 14 Minn. 454, and 2 Story on Con. sections 1780–81.

The Legislatures of different States have not regarded statute-laws, which permit offenses within short specified distances of county lines to be presented in either county as violating the real spirit of the common law, or of constitutional provisions, more or less, like the provision of our Constitution, which we have quoted. The evil intended to be corrected by such statutes was, that where crimes were committed on or near a county line, it might turn out in the proof, after a fair and expensive trial had fully established the guilt of the accused, that the indictment was in the wrong county, and the prosecution would be defeated on that ground alone; and thus a few yards might save great offenders from punishment. See *Wm. Armstrong et al.* v. *The State*, 1 Coldwell's R. 341. Therefore there has very properly been shown a disposition by the courts to sustain such statutes, and it has been done whenever there was in the Constitution any provision, which could be construed as conferring any discretion on the Legislature as to the venues for the trials of crimes. But on the other hand courts have been compelled in some of the States to hold such statutes as null and void, because they were in direct conflict with the Constitution. See *State of Minnesota* v. *Robinson*, 14 Minn. 447; *Armstrong* v. *The State*, 1 Cold. R. 338; *Dougan* v. *State*, 30 Ark. 41.

Section eight of the Bill of Rights of Virginia of 1776 provided: "That in all capital or criminal prosecutions a man hath a right to demand the cause and nature of his accusation; to be confronted with the accusers and witnesses; to call for evidence in his favor; and to a speedy trial by an impartial jury of his vicinage, without whose unanimous consent he cannot be found guilty; nor can he be compelled to give evidence against himself; that no man be deprived of his liberty except by the law of the land or the judgment of his peers." This Bill of Rights was again prefixed to the Virginia Constitution of 1830 without a change, and was made a part of the Constitution of 1850 with scarcely any change and with no change in this eighth section. And as amended in 1850 it was incorporated into the Constitution of Virginia of 1864, and with slight additions again incorporated into the Constitution of Virginia of 1870; this eighth section never having been changed in Virginia. On March 14, 1848, the Legislature of Virginia adopted what was called a criminal Code, and by chapter 9 section 7 thereof it was provided, that "Any offense committed on the boundary of two counties or within one hundred yards of the dividing line between them, may be alleged in the indictment to have been committed and may be prosecuted and punished in either county." See Acts of 1847–48 p. 122. This has been continued as the law, slightly changed in its wording, ever since both in Virginia and West Virginia. See Code of Virginia of 1860, ch. 199 § 13 p. 813; Code of West Virginia, ch. 152 § 12 p. 700. There have been no decisions in either State as to the constitutionality of this law. I presume it will be held constitutional in Virginia, as the words of the Bill of Rights and of the Constitution of Virginia only required, that crimes shall be tried in the *vicinage* of the place where committed, and not in *the county* where committed; and in Massachusetts, where the Constitution speaks of the *vicinity* of where the offense is committed as the venue of the trial; and it was decided in the *Commonwealth* v. *Parker*, 2 Pick. 550, that the word *vicinity*, as here used, was not the equivalent of *county*. And I presume it would be held in Virginia, that the word *vicinage* in their Constitution was not equivalent to county; and if the crime was committed within one hundred yards of

a county line, under the above statute it could constitutionally be tried in either county.

In fixing the venue for the trial of crimes the provisions of our Constitution were similar to those of Virginia, but in the Constitution of Virginia, of 1875 the word county is substituted for the vague word "vicinage." In article 6 of the amendments of the Constitution of the United States substantially the same provisions were inserted as are found in section 9 in this Virginia Bill of Rights, except that the venue instead of being the *vicinage*, as in the Virginia Bill of Right, is "the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law."

In the Constitutions of a number of States their Bill of Rights, adopts the language of this amendment to the Constitution of the United States except, that the venue is fixed in the county or district where the crime was committed, instead of the "State or district," and some of them omit the words "the district shall have been previously ascertained by law." As instances of this we may refer to the Constitutions of Kansas, Illinois, Tennessee, Wisconsin, Ohio and Minnesota. It this last State this constitutional provision has been interpreted. Section 6 of article I. of their Constitution provided: That "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county or district wherein the crime shall have been committed, which county or district shall have previously been ascertained by law." And section 20 of chapter 108 of their General Statutes provides: That "offenses committed on the boundary-lines of two counties on within one hundred rods of the dividing line between them, may be alleged in the indictment to have been committed in either of them, and may be prosecuted or punished in either county." This is substantially the same as our statute law, except we have substituted one hundred "yards" for one hundred "rods." In *The State of Minnesota* v. *Robinson*, 14 Minn. R. p. 447, the court decided, that this statute was not in conflict with their Constitution. This conclusion was however rather hesitatingly reached. No authorities were referred to really sustaining it; the authorities referred to

being English, New York and Massachusetts laws. Of course the English authorities are entitled to no consideration on this question, as Parliament has a right of course to pass such a statute, there being no Constitution to restrain it in this matter. The New York cases are also entitled to no consideration, as the Constitution has in it no clause fixing the venue in criminal cases. The Massachusetts cases are also entitled to scarcely any weight on this question, as their Constitution if it can be considered as in any way fixing the venue in criminal cases, can only be regarded as requiring it to be in the "vicinity" of the place, where the offense was committed. See *Commonwealth* v. *Parker*, 2 Pick. 549. But whatever weight this Minnesota decision may be entitled to in States whose Constitutions are similar to this, it is entitled to very little if any weight in this State, whose Constitution in this respect, differs largely from theirs.

By the terms of our Constitution article 3 § 14 p. 7 of Acts 1872–3 the venue in all criminal cases is, the "county" where the alleged offense was committed. While by the Minnesota Constitution this venue was not confined to the county where the crime was committed, but might be extended to the district, which might include many counties. The Constitution of Minnesota provided for dividing the State into six districts, and for establishing in each district a court presided over by the same judge, who should have original criminal jurisdiction; and thus a crime could be punished by a trial in a county, which might be at a considerable distance from the county, in which the crime was committed, and by a jury none of whom might be from such county. The court, in *State of Minnesota* v. *Robinson*, 14 Minn. 452, refer to this and base their decision in part on this peculiarity of the Minnesota Constitution, which is not to be found in ours, in which the boundaries of a county are necessarily the boundary of the jurisdiction of all courts having original jurisdiction in criminal cases. We conclude, therefore, that this Minnesota decision is entitled to but little weight with us in reaching a conclusion in the case before us.

The language of the Tennessee Constitution of 1834, Art. I., § 9, is: "In all criminal prosecutions the accused shall have a right to a speedy public trial by an impartial jury of

the county or district, in which the crime shall have been committed." See Pooris Charters and Constitutions, Part 2, p. 1678. In this Constitution there is no provision for district courts having original criminal jurisdiction, but like our Constitution all courts having original jurisdiction in criminal cases were in their jurisdiction limited to the boundaries of their respective counties, including the circuit courts. This is referred to in *Armstrong et al.* v. *The State*, 1 Coldwell 342, where the court say, that this word "district" in this provision of their Constitution fixing the venue in criminal cases was unmeaning, it having been carelessly copied from their previous Constitution; and if the word district is thus disregarded as unmeaning, this Tennessee Constitution in so far as it fixes the venue in criminal cases is the same as ours; and in this case of *Armstrong* v. *The State*, 1 Coldwell's R. 338, the court decided, that a provision in their Code, § 4976, which provided, that "when an offense is committed in the boundary of two or more counties *or within a quarter of a mile thereof*, the jurisdiction is in either county" was unconstitutional, null and void, it being in conflict with their Constitution, which they interpreted to be in this respect the same as ours. This case is directly in point, and is entitled to great consideration by us, especially as the court reached this conclusion reluctantly, and only because they regarded the law as being in direct conflict with their Constitution. (See page 342.)

The Constitution of Arkansas provided that: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county, in which the crime has been committed, &c." This is substantially the provision in our Constitution. The revised statutes of Arkansas, see Gantt's Digest, section 1648 provided: "When the offense is committed on the boundary of the counties, *or within a half a mile of such boundary*, or if it is uncertain where the boundary is, the indictment may be found and a trial had in either county." In *Dougan* v. *State*, 30 Arkansas, R. 41 the court decided, that so far as the act invested the court with jurisdiction of crimes committed beyond the limits of the county it was unconstitutional, null and void. This decision is directly in point, in the case be-

fore us. In the case of *The State* v. *Rhoda*, 23 Ark. 158, the court said : "Cases may occur, in which the crime may be committed on the boundary between two counties, &c. In such cases it would certainly be a narrow construction of the provision of the Bill of Rights in relation to venues to hold, that the offender would not be subjected to indictment at all."

The first Constitution of West Virginia departing from the Bill of Rights, which had always constituted a portion of all the different constitutions of Virginia instead of providing, that the venue in all criminal cases should be in the *vicinage* of the place, where the crime was alleged to have been committed provided, that "the trial of crimes and misdemeanors, unless herein otherwise provided, shall be by jury, and shall be held publicly and without unreasonable delay, in the *county* where the alleged offense was committed, unless upon petition of the accused for good cause shown, or in consequence of the existence of the war in such county, it is removed to or instituted in some other county." See Code of West Virginia, p. 21; Art. II., § 8 of Constitution. This provision slightly modified was continued in our present Constitution of 1872. See Art. III., § 14, page 7. It is now worded thus: "Trials of crimes and misdemeanors, unless herein otherwise provided, shall be by a jury of twelve men, public, without unreasonable delay, and in the county where the alleged offense was committed, unless upon petition of the accused, and for good cause shown, it is removed to some other county." But despite this constitutional privilege, the statute-law of Virginia with reference to the venue in the prosecution of crimes committed within one hundred yards of a county line was continued on our statute-books. It is thus worded in the Code of West Virginia: "An offense committed on the boundary of two counties, or within one hundred yards thereof, may be alleged to have been committed, and may be prosecuted and punished in either county. Code of W. Va. ch. 152, § 12, p. 700; Code of Va. of 1860 p. 813. This law so far as it authorizes the prosecution of a crime in a county, in which it was not committed, provided the crime is committed within one hundred yards of the county line is in direct conflict with the express

provisions of our Constitution above quoted, and is therefore
unconstitutional, null and void.    And however convenient
this statute may be, and however essential it may be, that
such provisions should be made so as to insure in certain
cases the convenient and certain punishment of offenders in
certain cases, it can not stand if in direct conflict as it is with
our Constitution.    In the language of the court in *Arm-
strong* v. *The State,* 1 Coldwell 342, slightly modified, "Crimi-
nals have their rights.    Some of them are enumerated in
this section of our Constitution.    They must be secured as
effectually as other constitutional rights; one of these rights
is to be tried by an impartial jury 'of the county,' in which
the offense is alleged to have been committed.    This legisla-
tive provision is, that he shall not in all cases have that right,
but that he may be presented by a grand jury and tried by a
jury of a different county in the given case.    If it be no in-
fraction of this right, when the place of the crime is within
one hundred yards of the county line, it would not be if it
were ten miles distant.    The words 'unless herein otherwise
provided' cannot vary the case.    It was carried into our
present Constitution by copying from the old, and is unnec-
essary, as in no case is 'it otherwise provided' in our present
Constitution; nor was it otherwise provided in our old Con-
stitution in the cases coming within this statute."

The conclusion which we have reached is fully sustained
by *Armstrong* v. *The State,* 1 Coldw. 338, and *Dougan* v. *The
State,* 30 Ark. 41, and is not in conflict with any case I have
seen, and especially not with the *State of Minnesota* v. *Robin-
son,* 14 Minn. 447.    For that case while it held such a statute
was not in conflict with their Constitution, yet it was so held
because of provisions in their Constitution, which are not to
be found in ours.    The court below did not therefore, in
the case before us, err in refusing to give the plaintiff's instruc-
tion.    Such instruction was not law, unless this statute-law
was constitutional and operative, which it is not.    But the
court did .err in granting the defendant's instruction in
the form, in which it was worded.    I do not mean to say,
that the law is not set forth correctly in this instruction asked
by the defendant, but that it is so worded as to make the
court say to the jury, "that the evidence of the State shows,

that the offense was committed within the county of Roane within one hundred yards of the line of the county of Calhoun." This may be so and it is not improbable that it was, though of this we know nothing, as the evidence has not been certified by the court below. But it was obviously the duty of the jury, and not of the court to determine, whether on the evidence the offense was committed, and if so, whether it was committed in Calhoun county or in Roane county. And it was a palpable invasion of the province of the jury for the court thus to tell them what was proven by the evidence, and that on the facts thus assumed by the court to have been proven, they must find the defendant not guilty. The court ought never to intimate in any way, much less to say positively to the jury, that the guilt or innocence of the defendant has been proven. This is a palpable error on the part of the court, who in giving instructions should be careful not to assume any material fact as proven. The court ought not in a charge or in an instruction to assume material things as facts, or to put them in an instruction in such a shape as to intimate to the jury what the judge believes is proven by the evidence; and if this be done it is error, for which the judgment will be reversed. *Whitly* v. *State of Georgia,* 38 Ga.; *McDowell's Ex'r* v. *Crawford,* 11 Gratt. 377; *State* v. *Robinson,* 20 W. Va.

It is true that in *Sheff et ux.* v. *The City of Huntington,* 16 W. Va. p. 307, syl. 9, this Court decided, that "when there is an assumption of a fact in an instruction given to the jury, and the evidence which is certified as to the correctness of the assumption is so full and uncontradicted as to necessitate the inference, that it was undisputed or tacitly admitted, the judgment will not be reversed because the fact was so assumed to be true." But, that the fact assumed in this instruction asked by the defendant, that is, that the "offense in this case was committed in the county of Roane and not in Calhoun county" cannot be regarded by this Court as an undisputed fact or as one tacitly admitted, and as "fully sustained by the evidence as to admit of no question." On the contrary there is nothing in the record to show, that this fact was proven by the evidence or admitted by the defendant. Nor can we say, that the jury

was not influenced in drawing the conclusion, that this fact was proven by the unauthorized expression of opinion by the court, that this fact was proven. The instruction, which the court should have given in lieu of this instruction asked by the defendant is, "that if from the evidence the jury believes that the offense named in the presentment was committed not in Calhoun county but in Roane county, the jury must find the defendant not guilty, even though they believe the evidence proves, that the offense was committed within one hundred yards of the county line of Calhoun county." The latter part of this instruction, "that a conviction on the indictment in this case could not be pleaded in bar of a prosecution against the defendant for the same offense in the county of Roane," ought not to have been given. We express no opinion whether it lays down the law correctly or not, but it ought not to have been given because it was a matter with which the jury had nothing to do. Their duty would have been precisely the same, whether the defendant could or could not have been again prosecuted. This portion of this instruction was therefore about a matter entirely foreign to his case, and it ought not to have been given.

The judgment of the circuit court, rendered on Wednesday, the 26th day of October, 1881, must be therefore set aside, reversed and annulled, and the plaintiff in error must recover of the defendant in error his costs in this Court expended, and this Court proceeding to render such judgment as the court below should have rendered, it is therefore considered, that the verdict of the jury be set aside because of the misinstruction given them by the court and a new trial is awarded, and this case is remanded to the circuit court of Calhoun county to be there proceeded with according to the principles laid down in this opinion, and further according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.   CASE REMANDED.