Joynes, J.
Tbe court did not err in giving tbe instruction moved by tbe defendant. It was in accordance with the doctrine of a majority of tbe whole court, in Whitworth v. Adams, 5 Rand. 333; following Taylor v. Bruce, Gilmer 42; and recognized as the settled law of the State, in Brummel & Co. v. Enders, Sutton & Co., 18 Gratt. 873.
Tbe instruction moved by tbe plaintiff was predicated upon tbe supposition that Lancaster & Co. did not sell tbe note to tbe defendant as tbe agents of the maker and endorser, or either of them, as supposed in tbe instruction moved by tbe defendant; but that they bad themselves become tbe purchasers of it, and after-wards, while they held it as them own property, sold it to tbe defendant. This instruction did not submit to *448 the jury the general question whether the note had heen purchased by Lancaster & Co., and sold by them,
• as their own property, to the defendant. It set forth various supposed facts, and implied, without saying so, that if these supposed facts were true, Lancaster & Co. had purchased the note, and sold it to the defendant as their own property; which would have made a case of usury. The court, upon refusing to give this instruction, gave another, of its own motion, which, without any recital of special circumstances, submitted to the jury, in general terms, the question, whether the note was purchased by Lancaster & Co.; and instructed them that, if it was, it was a case of usury. The court evidently designed to embody, in this instruction, the same proposition as that embodied in the prayer of the plaintiff. It doubtless thought that the form in which the latter was expressed was calculated to confuse the jury. If the instruction thus given fell short, in its scope and effect,'of the instruction moved by the plaintiff, the difference was fully made up by the instruction subsequently given on the motion of the plaintiff. The plaintiff, therefore, has no right to complain; he obtained from the court substantially the same instruction he asked for, and in a simpler and more intelligible form. The instruction moved by the plaintiff was liable, however, to a more serious objection. It did not present to the mind of the jury the distinct question, whether Lancaster & Co. had become the purchasers and owners of the note, upon their own account. A lawyer would readily understand, upon reading the instruction, that that was the question involved; but a plain man, without legal knowledge, would hardly discover it without explanation. Moreover, it assumes that Lancaster & Co., at the time the note was delivered to them by Gimmi, “paid him for the said note the sum of $5,894 1Y, out of their own money,” having then no money of Cullen in their hands, and no autho *449 rity from him to purchase a note for him, and says that, if that was so, the transaction was usurious. This could not be true unless the $5,894 17 was paid as the price of the note; unless the transaction was a sale of the note hy Gimmi, and a purchase of it hy Lancaster & Co. If it was paid for the note, in the sense of an advance of money upon it, in the expectation of making a sale of it, the note being still the property of Gimmi, then the proposition of the instruction would not he true. And in this view, the fact that the money was paid out of Lancaster & Co.’s own funds was wholly unimportant. And that fact was unimportant in any view, unless it was paid, on their own account, on a purchase of the note for their own benefit. They might advance it for Dr. Cullen, as a loan to enable him to make the purchase, as Lancaster says was the fact. The fact is, that while only $5,894 17 was put to the credit of Gimmi on the hooks of Lancaster & Co. on the 30th April, 1866, the day the note was delivered hy him to them, the sum was increased, on the 1st day of May, 1866, the day on which the sale was made to Cullen, conditionally, to $5,926 67, on the nett proceeds of the note. The instruction withholds any consideration of this fact from the jury, and makes the transaction turn upon the payment of the $5,894 17, upon the delivery of the note. "Without pursuing this subject any further, I think that this instruction was calculated to confuse and mislead the jury, and ought, for that reason, to have been refused. It would have been no error to refuse it, without substituting any other in its place.
The hill of exceptions in relation to the instructions given and refused discloses, therefore, no error.
In considering the hill of exceptions to the refusal of the court to award a new trial of the issue, the question arises, whether it is to he regarded as containing a certificate of the evidence given on the trial, or a cer *450 tifieate of the facts proved on the trial, in the opinion of the Circuit court. The counsel for the plaintiff contended, that notwithstanding it does not, in terms, profess to certify the facts proved, yet as the evidence stated was all introduced hy the plaintiff, and there was no intimation that any part of it was not credible, it should all be taken to be true; so that the certificate should be regarded as substantially a certificate of the facts. The language of the bill of exceptions, however, indicates that the intention of the court was to certify the evidence, and not the facts. It says, “the court certifies the following as the evidence in the cause.” “ Robert A. Lancaster [the only witness as to the transaction in controversy,] deposed as follows.,” It says that the other witnesses also introduced by the plaintiff “ testified,” &c.
Since the distinction between a certificate of evidence and a certificate of facts proved, has been so fully established and so well understood, it can hardly be supposed that the judge or the counsel, both of long experience and eminent learning and ability, would employ such language, when the intention was to have a certificate of the facts proved. The use of such words in the bill mil not be decisive of the character of the certificate, if it appears from the use of other words, or from the general scope of the certificate, that the object of the court was to certify the facts and not the evidence merely. Jackson’s adm’x v. Henderson, 3 Leigh 212. But in this case there is no statement, as in Carrington v. Bennett, for instance, that “these were all the facts proved,” nor any other expression to impair the force of the other words, and throw doubt upon the character of the certificate. And we shall see from the cases which will be cited, that the facts that the evidence was all introduced by one side, and that it was not contradicted, are not sufficient to deter *451 mine that the certificate was designed as a certificate of facts.
Regarding the certificate as intended to be a certificate of the evidence given on the trial of the issue, the next question is, was it well taken to authorize this court to review the judgment overruling the motion for a new trial in the present case.
In Bennett v. Hardaway, 6 Munf. 125, a motion had been made for a new trial, on the ground that the verdict was contrary to the evidence, and the motion being overruled, a bill of exceptions was taken, which certified all the evidence given to the jury, instead of the facts which appeared to the court of trial to he established by the evidence. This court held that the bill of exceptions was not well taken, and that it could not reverse a judgment refusing a new trial, except upon a certificate of the facts proved. The ground of the decision was, that some of the witnesses may have been discredited in the court below, and that this court might form its opinion upon testimony which was there discredited. Judge Roane, delivering the opin-. ion of the court, said: “It does not follow that a judge believes every witness who gives evidence before him, as he may well hesitate to do from the manner of testifying and other extraneous circumstances; nor can he do it where they conflict with one another. It is evident, therefore, that in this case the opinion of this court might be founded upon the testimony of witnesses who were discredited both by the jury and the court below. This court only sees’the evidence on the. record, and on paper the credit of every witness is the same, who is not positively impeached.” . This case has never been overruled or questioned.
Subsequent cases, however, have established a modiRcation of the doctrine of Bennett v. Hardaway, but entirely consistent with it in principle, which has long-been the settled rule of this court. This rule is, that *452 a bill of exceptions to the refusal to grant a new trial, may be dealt with by rejecting all the evidence on the - part of the exceptor, and considering the case upon the evidence of the other party alone. In the application of this rule, the evidence of the party who prevailed below, is to be taken as true. If, testing the case upon this rule, the judgment cannot be sustained,, it will be set aside. Ewing v. Ewing, 2 Leigh 337; Green v. Ashby, 6 Leigh 135; Rohr v. Davis, 9 Leigh 30; Vaiden’s Case, 12 Gratt. 717; Butts’ Case, 14 Gratt. 613; and many other cases. It is obvious that this-rule does not encounter the difficulty which led to the decision in Bennett v. Hardaway. Ho question of the-credit of the witnesses can arise. The exceptor gives-, up his own evidence, bringing it to the same thing as-if he had not introduced a witness: and he admits the-truth of the evidence adduced by the other side. So, in every case where a new trial is asked fi-onr an appellate court, upon a certificate of the evidence only, the party who asks it must give up his own evidence, if any, and admit the truth of his adversary’s evidence, if any. Otherwise, he must encounter the difficulty upon which the decision in Bennett v. Hardaway proceeded.
The same principles apply, though all the evidenceivas adduced by one side. Carrington v. Bennett, 1 Leigh 340, and Green v. Ashby, 6 Leigh 135, were-cases of that sort. In the former case, Bennett, as assignee, brought an action on a bond against Carrington, to which the defence was that the bond was given for money won at unlawful gaming. The plaintiff" proved the bond and the assignment, and this was his only evidence. The defendant introduced a witness-to sustain his defence, and the jury found for the plaintiff. ' A motion was made for a new trial and overruled. There was a question in this court, whether the bill of exceptions should be construed as¡ *453 •a certificate of the evidence only, or as a certificate of ■the facts proved. Judge Carr regarded it as a certificate of evidence only; Judges Green and Coalter considered it as a certificate of facts. Judge Carr field, that -this court could not review tire judgment upon this certificate, upon the ground that the court and jury might have discredited Carrington’s witness. He said: “But how do we know that the court and jury believed this witness ? They may have discredited his whole tale. They saw and heard him, and there may have been that in his manner (though wholly hidden from us) which proved to them that he was wholly unworthy of credit.” * * * “And if, upon the strength of what this witness swore, we reverse the .judgment and set aside the verdict, may not our opinion (in the words of Judge Boane) be founded upon testimony discredited by the jury and court below ?”
It will be observed that, in the view of the bill of «exceptions taken by Judge Carr, Carrington v. Bennett was precisely like the case before us. All the evidence upon the issue had been introduced by the exceptor, and there was no intimation in the record as to whether the court did or did not give credit to- it. “There was no inconsistency in the evidence; the ex-•ceptor was asking the court, as in the present case, to assume that the evidence of his witness was entitled to credit: being the only evidence in the cause and not impeached; and to hold that the court and jury had «drawn the wrong conclusion from it.
Green v. Ashby was a converse case. The bill of exceptions to the refusal of the court to grant a new trial, certified the evidence given to the jury, the whole of which was introduced by the plaintiff, in whose favor the verdict was rendered. The court held that the bill •of exceptions was well taken, and being of opinion that, giving full credit and weight to the evidence of ¡the plaintiff, the judgment was erroneous, it was re *454 versed, and a venire de novo awarded. President Tucker, after adverting to the general rules in reference to bills-of exceptions or motions for new trial, said: “ From this view, we may deduce the rule that no bill of exceptions is properly taken, wbicli submits to this court conflicting evidence, upon tbe credit of which we must decide, before we can pronounce upon the judgment of the inferior court. And, for a like reason, though the evidence be all on one side; yet, if that which is introduced, is adduced by the excepting party, the bill of' exceptions is not properly framed, if it recites the evidence which was given, instead of setting forth the-facts: for, peradventure, the court and jury may have-discredited the witnesses; and, if so, this court coulct not interfere. This was the case in Carrington v. Bennett, m. the opinion of one of the judges. There was-no conflicting evidence upon the real matter of litigation between the parties. All the evidence to that point was on the side of the exceptor; and as the-court and jury both decided against him, the court could not, upon its own principles, have overruled their opinion upon the weight of the evidence, unless-the facts as proved were duly stated. In this the whole-court very obviously concurred; though the majority were of opinion, that the question of the truth of the-evidence was not submitted; but that the facts were properly certified.” Judge Cabell thought the bill of' exceptions well taken, because there was no conflict in the evidence, which was all on one side, and “ against the party tendering the exception.” From this it is-plainly to be inferred that he concurred in the opinion with Carr, J., and Tucker, P., as to a case in which all the evidence was introduced by the excepting party.
The rule, therefore, is, that where all the evidence is introduced by one party, and the verdict is in his favor, the other party may have a refusal to grant a new trial reviewed, upon a bill of. exceptions certifying the evi-' *455 dence only. In such a case, the evidence certified will be considered as true by the appellate court, unless impeached in some way. But, when the verdict is against - the party who introduced the evidence, he cannot have the refusal of the court to grant a new trial reviewed upon a certificate of the evidence merely: he must have a certificate of the facts proved, or a certificate that the evidence was considered true by the court of trial; which would amount to a certificate that the facts stated in the evidence were really facts proved. From the evidence certified in the former case, and from the facts certified in the latter, the appellate court will draw such inference as a jury might reasonably draw.
The bill of exceptions to the refusal of the court to grant a new trial was, therefore, not well taken, and we cannot review the action of the Circuit court on that point. It is hardly necessary to say, that in the objection made to the bill of exceptions, I do not intimate any personal distrust of the truth of Mr. Lancaster’s testimony, nor any belief that it was discredited by the jury or the court below. But the law is no respecter of persons, and its rules apply to all men alike.
The result would not have been different, however, if the facts proved had been certified, or if the evidence had been certified to be true. The fair result of the evidence certified, assuming that the witness was entitled to credit, is, that Gimmi delivered the note to Lancaster & Co., on the 30th day of April, to be sold by them as his agents and for his benefit; they knowing that the note was without consideration, and made to raise money; that Lancaster & Co. received the note as Gimmi’s agents, and thereupon, on the samé clay, paid him the sum of $5,894 17, as an advance on the note, iii\taticipation of a sale of it to be made by them for him'; as his agents; that, on the 1st day of May, they, as agents for Gimmi, made a conditional sale of *456 the note to Dr. Cullen, at a discount of one and a quarter per cent, a month; the condition being that Cullen should have a right to look into the title to the property which had been conveyed to secure the payment of the note, and to decline the purchase if not satisfied with it; that on the same day (May 1st), Lancaster & Co. increased the sum paid to Gimmi to $5,926 67, that being the net proceeds of the note; that Lancaster & Co. paid for the note with their own money, because, when they offered it to Cullen, on the 1st day of May, he told them that he had no money, and objected to taking it on that ground; that they, knowing that Cullen had notes coming to maturity at an early day, told him they would advance the money for him, and did so accordingly; that Cullen looked into the title, was satisfied with it, took the note, and on the 16th day of May the transaction was closed by Cullen paying to Lancaster & Co. the $5,926 67 paid by them to Gimmi on the 1st day of May, as the net proceeds of the note, and also sixteen days’ interest on that sum; that Lancaster & Co. had no authority to buy paper for Cullen; that Lancaster & Co. were never the owners of the note; and that Cullen did not know, either on the 1st day of May, or on the 16th, for whom the note was sold, what was the origin or the consideration of it, or the purpose for which it was made: In all this .it is evident that there was no usury, according to the law, as settled in Virginia by the ease of Whitworth v. Adams.
I am of opinion, therefore, to affirm the decree.
Decree affirmed.